Madden, Judge,
delivered the opinion of the court:
In 1906 the plaintiff leased certain gas and electric properties to The Consolidated Railway Company for a term of 999 years. In the lease the lessee covenanted to pay all the taxes which might be imposed upon the lessor in relation to *652 tbe leased property. By reason of subsequent transfers, subleases, and a merger, the lessee’s interest came into the ownership of a company, herein called the Power Company, which assumed all the obligations of the lease. The Power Company and the plaintiff made various agreements modifying the terms of the lease and, on December 30,1943, entered into a so-called Definitive Agreement to clarify the obligations of the parties as to, inter alia, income taxes imposed upon the lessor.
In the 1943 agreement it was provided in effect, that the lessee would be liable to reimburse the lessor for income and excess profits taxes according to a detailed and complicated method of computation under which, however, the amount to be reimbursed would never be more than the taxes actually attributable to the rent received by the lessor from the lessee. For each of the years involved in this suit, the plaintiff accrued against the lessee the amount of income and excess profits taxes paid by the plaintiff, and reimbursable by the lessee according to the agreement. These amounts were collected from the lessee in the years following their payment by the plaintiff.
In its tax returns, the plaintiff listed as “rents” both the amounts received as rents under the lease, and the amounts reimbursed to it by the lessee for taxes and for the taxes on those taxes. The consequence is illustrated by the following-example. A leases property to B for an annual rent of $10,000, B agreeing also to reimburse A for taxes paid by A on account of the lease. The tax rate is a flat 40 percent. A lists on his tax return the $10,000 rent. The tax on that is $4,000, which is reimbursable to him, so he also lists that as rent. The tax on the $4,000 is $1,600, which is reimbursable to him, so he also lists that as rent, and pays a tax of $640 on it. The instant suit is to recover the payments made by the plaintiff corresponding to the $640 in the example, the “second tax” or tax on a tax. The plaintiff says that the law did not permit the imposition of the “second taxes,” that they were paid by mistake, and, timely claims for refund having been made, are recoverable.
To whatever degree reimbursement is carried in this type of case, the amount of the reimbursement is. in all reason, in *653 come. Having someone pay one’s income taxes is just like having him put money in one’s pocket, and if he does it pursuant to a lease, or an employment contract, it is just like rent or salary. But in Old Colony Trust Company v. Commissioner, 279 U. S. 716, the taxpayer argued that if the first reimbursement was taxed, there was no logical stopping place short of infinity, and hence the process of taxing the tax should not be permitted at all. The Government, in its brief on reargument in that case said, at pp. 28, 29:
It is true that in earlier years there was a lack of uniformity in treatment and that in some cases the amount of additional taxes paid by another was in turn added to the taxpayer’s income. Since 1923, however, the practice has been settled and the Treasury Department has added only the original tax paid by another, and abandoned any attempt to treat the additional tax as additional income.
The Supreme Court noted the Government’s statement in its opinion, though of course it did not decide as to the validity of a tax on the second or a more remote tax.
The Government’s statement was true, as to the practice of the taxing authorities, and continued to be true until March 12,1952, when the Commissioner of Internal Revenue issued Mimeograph 6779 (C. B. 1952-1, p. 8), which provided that all Federal taxes paid to, for, or on behalf of a landlord by a tenant must be included in the taxable income of the landlord. This meant, of course, that to whatever degree the parties, by their agreement, carried reimbursement, the Government would collect taxes on the amount reimbursed. On October 14, 1952, the Commissioner by I. R.-Mimeograph 51 (C. B. 1952-2, p. 65) amended Mimeograph 6779 by making it applicable to all types of income payments including, but not limited to, payments for personal services, alimony, and purchase or rental of property. The October 14 ruling provided, however, that it would not be applied for taxable years beginning prior to January 1, 1952,
* * * except that any Federal income or excess profits taxes which have been paid on account of the inclusion in gross income of the taxes paid by the payor will not be refunded.
*654 The plaintiff had paid the taxes for the years here in question, and therefore was not helped by the partial non-retro-activity of the new ruling. The plaintiff complains of the October 14 ruling on the ground that it is a retroactive change in the law by mere regulation, and that, in any event, it discriminates without justification between taxpayers who had paid their taxes and those who had not.
The Government does not rely on the 1952 regulations, hence we do not discuss them further. It says that what the plaintiff received was rent, and was therefore taxable as such. Of course what the plaintiff received was rent, and was just as useful to it as the so-called “basic rent” on which the first tax was computed. But that it was therefore taxable is not so obvious. To say that it was taxable is to ignore 80 years of tax administration in which it was not taxed; is to ignore the fact that because of the Government’s representation to the Supreme Court that it was not being taxed, the Court published that representation to all who were interested. We think that the law in action cannot be so divorced from the law in the books as to make the latter applicable only to an occasional unfortunate who happened to pay his taxes on the basis of the law in the books. The Government’s disclaimer of reliance upon the 1952 regulation with its express provision for discrimination, cannot erase the fact of the discrimination.
The Government makes something of the fact that the reimbursement agreement in the instant case contained an arbitrary maximum figure beyond which reimbursement would not be made. Of course if a tenant agreed to pay a basic rent plus all the income taxes of the landlord on his income from all sources, that would present a different problem. But if the tenant agrees to pay the landlord’s income taxes only on a stated proportion of the rent, that seems to us to present the same problem as if he agreed to pay such taxes on all of the rent.
The second part of the plaintiff’s case relates to the dis-allowance by the Commissioner of Internal Kevenue of a deduction from the plaintiff’s excess profits net income for the year 1945 of the unamortized portion of the premium on certain bonds issued by the plaintiff.
*655 On March 29,1945, the plaintiff issued and sold $6,000,000 of its bonds, receiving for them $6,090,000. They bore the maturity date of November 15,1974. On December 15,1945, they were redeemed and retired by the plaintiff, at a cost of $6,207,000. In the plaintiff’s corporate excess profits tax return for 1945, the plaintiff excluded from its excess profits net income the sum of $87,475.50.
The $87,475.50 figure was arrived at by amortizing the $90,000 premium received by it on the issue of the bonds, over the 356% months which the bonds would have stood out, if they had not been called and redeemed, the amortization coming to $252.45 per month. They were treated as having been outstanding for 10 months, hence $2,524.50 of the premium of $90,000 was already amortized, leaving an unamor-tized amount of $87,475.50.
Section 711 (a) (2) (E) of the Second Eevenue Act of 1040, 54 Stat. 974,977, as amended 56 Stat. 903 relating to the excess profits tax, says:
(E) Income, from retirement or discharge of bonds, and so forth. — There shall be excluded, in the case of any taxpayer, income derived from the retirement or discharge by the taxpayer of any bond, debenture, note, or certificate or other evidence of indebtedness, if the obligation of the taxpayer has been outstanding for more than 6 months, including, in case the issuance was at a premium, the amount includible in income for such year solely because of such retirement or discharge; * * *.
The Government says that because the issue at a premium of $90,000 and the redemption at a loss of $207,000, both took place in the same taxable year, the two transactions should be “netted” and they result in a net loss of $117,000. There was, therefore, no income accruing because of the retirement of the bonds. For income tax, as distinguished from excess profits tax, purposes, the two transactions would be, in effect, set off against each other.
The plaintiff urges that Congress, recognizing that the unusual sort of gains resulting from the redemption of bonds would not come within the reason of the excess profits law, intended that such gains, though for income tax purposes they would be taxable, or would reduce loss deductions, should not be counted at all for excess profits tax purposes, *656 either as taxable gains, or as offsets against deductible losses. We are not free from doubt, but we think the statutory language favors the plaintiff. The fact that the statute requires that the bonds should have been oustanding only six months indicates that Congress was not ruling out the possibility of the issue and the redemption both taking place within the same taxable year.
The plaintiff is entitled to recover on the claims involved in both issues discussed in this opinion, with interest as provided by law, and judgment will be entered to that effect. The amount of the judgment will be determined in further proceedings pursuant to Rule 38 (c).
It is so ordered.
LaeamoRe, Judge; Whitaker, Judge; Littleton, Judge; and Jones, Chief Judge, concur.
FINDINGS OE FACT
The court, having considered the evidence, the report of Commissioner Roald A. Hogenson, and the briefs and argument of counsel, makes findings of fact as follows:
1. Plaintiff was and is a Connecticut corporation with principal office at Bridgeport, Connecticut, engaged in the business of operating buses for transportation of passengers in and between cities in Connecticut. Plaintiff also owns certain gas and electric properties, from which it receives rental under a long-term lease.
2. Plaintiff keeps its books and records, and files its federal tax returns on the accrual method of accounting and on the calendar-year basis.
3. Within the time required by law, plaintiff filed with the collector of Internal Revenue for the District of Connecticut its corporation income, declared value excess profits and excess profits tax returns, for the years 1944 through 194:7, disclosing the following amounts of taxes due for each of the years indicated:

Total Federal taxes due

1944_ $1,241,291.80
1945_ 792,249. 61
1946_ 654,061.50
*657 The above amounts were duly satisfied either by credit or payment. Subsequently, the Commissioner of Internal Revenue assessed, and plaintiff paid, the following amounts of deficiencies in tax for the years indicated with interest thereon:

The Commissioner also determined and allowed certain over-assessments of income tax for the years 1945 and 1947, with respect to items not involved in this proceeding.
4.Plaintiff filed with the collector of Internal Revenue for the District of Connecticut claims for refund, the bases of which were the same as asserted in this action, for the kind of taxes on the dates and in the amounts as follows:

Of the amount claimed for the year 1947, only $12,148.91 is sought in this action as the balance relates to issues not now urged.
5. The Commissioner of Internal Revenue, by registered letter dated May 9, 1952, rejected the aforesaid claims for refund for the years 1944 through 1946, inclusive, and by registered letter dated November 24,1952, rejected the claim for refund for the year 1947.
6. On or about December 19, 1906, the plaintiff, as lessor, and The Consolidated Railway Company, a Connecticut corporation, as lessee, entered into an agreement of lease wherein the plaintiff leased to The Consolidated Railway Company for a term of 999 years certain properties, including properties hereinafter referred to as the “gas and electric *658 properties.” Said lease contained, among other provisions, the following covenant:
And the Lessee further covenants to pay from time to time during the continuance of this lease all taxes, water rents, rates, charges, license fees and assessments, ordinary and extraordinary, of every nature and description, which may be lawfully imposed or assessed in any way upon the Lessor or Lessee with reference to the demised property the capital stock of the Lessor, its indebtedness, contracts, rights, privileges, franchises and revenues, or said reserved rental, or the disbursement thereof, or its right to do business or be a corporation; said payments to be made to the authority or treasurer entitled by law to receive the same, whether Federal, State or municipal; the intent of this agreement being that the Lessor may be able to disburse the rentals which it will receive in the annual sums as above mentioned in payment of interest upon debts and for sinking funds and for dividends upon its stock or for other distribution, without being required or finding it necessary to pay, retain or deduct any of the same for any other purpose through or by reason of any imposition or assessment by or under any laws or proceedings heretofore or hereafter made or authorized by the United States or by the State of Connecticut or by any municipality of said State.
7. By reason of subsequent transfers, subleases and a merger, The Connecticut Light and Power Company, hereinafter referred to as the Power Company, became the ultimate lessee of the so-called “gas and electric properties” and was such lessee during the periods involved in this proceeding. The Power Company, as the ultimate lessee, assumed the rights and obligations of the original and intervening lessees including the obligation in the covenant set forth in finding 6 above. The Power Company and the plaintiff have entered into subsequent agreements which further define their rights and obligations, copies of which are in evidence as Exhibits 1 to 8, inclusive, and are made a part hereof as if fully set forth. Pertinent parts of Exhibit 2 are summarized and quoted in findings 8 and 9.
8. Under date of December 30, 1948, plaintiff and the Power Company entered into a Definitive Agreement, in which one of the questions stated to have arisen between the parties for clarification was set forth as follows:
*659 (a) the question as to what obligation, if any, the Power Company might have with respect to (ii such income taxes as may be imposed upon the Original Lessor on account of the sum of fifty-two thousand five hundred dollars ($52,500.00) which the Power Company is obliged to pay annually to the Original Lessor under the 1917 Agreement, and (ii) such income taxes as may be imposed upon the Original Lessor either by virtue of the sinking fund adjustments stipulated in the 1921 Agreement or on account of such future payments to cover sinking fund requirements of indebtedness of the Original Lessor as the Power Company may be obliged to make;
The purpose of the Definitive Agreement was to record agreements between the parties as to this and other questions, and agreements were stated in paragraphs Second, and Third of Article III as follows:
Second: In each calendar year beginning with the year 1944 and ending with the year 1973 the Power Company will pay to the Original Lessor said sum of fifty two thousand five hundred dollars ($52,500.00) and will pay as rental for such year a sum equal to one hundred eighty-one thousand five hundred twenty-nine dollars and fifty cents ($181,529.50) plus the amount designated for such year in the following schedule: (Said amounts in the schedule to be paid one-half on June 30 and the balance on December 31 of each year).

Third: The share of the income taxes imposed on the Original Lessor for any tax year beginning with the year 1944 to be borne and paid by the Power Company shall be computed in accordance with the following principles:
1. Such share shall not in any one year be in excess of one quarter of the income taxes (including such compounding of taxes as may be required by law) which the Original Lessor would be obliged to pay if all its properties were leased and the Original Lessor received as rental a fixed sum of seven hundred twenty-six thousand, one hundred and eighteen dollars ($726,- *660 118.00) plus all interest and sinking fund charges on all its bonds outstanding in such year plus an additional income in the sum of fifty-two thousand five hundred dollars ($52,500.00) and as if its only deduction for tax purposes were the interest referred to in the sentence next following. In determining such interest and sinking fund charges and such interest deduction referred to in the sentence next preceding, it shall be assumed that (a) there were outstanding on January 1,1944 five million one hundred fifty-one thousand ($5,151,000) principal amount of bonds of the Original Lessor dated January 1,1944 and having a maturity date of January 1, 1974, bearing interest at the rate of three per cent (3%) per annum and one million one hundred four thousand dollars ($1,104,000) principal amount of bonds of the Original Lessor dated January 1, 1944 and having a maturity date of January 1, 1974 and bearing interest for the next seven years at the rate of four and one-half per cent (4%%) per annum and for the last twenty-three years at the rate of three per cent (3 %) per annum, and (b) that all of the aforesaid bonds requiring sinking fund payments applicable to the purchase of said bonds for cancellation at the principal amount thereof in the amount of cine hundred seven thousand dollars ($107,000) for each of the seven calendar years beginning with the year 1944, and in the amount of two hundred seven thousand dollars ($207,000) for each of the next ensuing sixteen calendar years, and in the amount of three hundred seven thousand dollars ($307,000) for the next ensuing six calendar years, and in the amount of three hundred fifty-two thousand dollars ($352,000) for the thirtieth year. For the purposes of this subdivision Third, it is understood and agreed that the computations pursuant to this subdivision Third will, for the period beginning with the calendar year 1974 and extending for the remainder of the term of the gas and electric lease, be based on the assumption that the Original Lessor has no debt outstanding after December 31, 1973.
2. If for any tax year the Original Lessor’s total gross income is less than the aggregate of the sums (applicable to such tax year) mentioned in the next preceding Paragraph 1, then the Power Company’s share of such net income tax for that year shall be based upon the Power Company’s percentage (as hereinafter defined) of the actual net income taxes payable for such year by the Original Lessor (excluding any compounding of taxes). The sum payable by the Power Company shall be increased by an amount equivalent to the same percentage *661 of any additional amount of taxes resulting from the compounding of taxes as would be required by law if the entire amount of the Original Lessor’s taxable net income were received by it as a lessor and the lessee or lessees had to pay all income taxes thereon. The Power Company’s “percentage” referred to shall be determined for each tax year by dividing
(a) the sum of the following:
$181,529.50 plus $18,125.00 plus so much of the amounts payable by the Power Company during such year as represent one-quarter of the theoretical sinking fund on the Original Lessor’s bonds as follows:
For each year from 1944 to 1950 inclusive_$26,750
For each year from 1951 to 1966 inclusive_$51,750
For each year from 1967 to 1972 inclusive_$76,750
For the year 1973_$88,000
(The computations herein provided for assume that interest on indebtedness is deductible and that sinking fund payments are not deductible in determining taxable net income. Appropriate adjustments will be made if in any tax year interest is not lawfully deductible in computing income taxes or sinking fund payments are deductible for such purpose.)
By
(b) the actual taxable net income of the Original Lessor for such year, excluding any compounding of taxes.
The following are illustrative examples:
Examples I, II and III use for illustrative purposes a tax rate of 40%.
Example IV uses for illustrative purposes a rate of 40% on the first $400,000 of taxable income and 60% on taxable income exceeding $400,000.
Example I: (which assumes the Original Lessor has taxable net income from transactions other than with the Power Company and taxable net income from the Power Company)
Total Actual Taxable Net Income of Original Lessor before including anything for reimbursement on account of taxes to be paid by the Power Company_ $500,000.00(A)
Amount to be received from lessee as tax free—
% of $726,118_$181,529.50
% of 52,500_ 13,125.00
% of S. F_ 50,000. 00
$244,654.50(B)
■^-=48.9309%
$200,000.00 Tax on $500,000 @ 40%.
500, 000. 00 Taxable Income_
$700,000.00
*662 Tax at 40%_ $280,000.00
48.9309%_ 137,006.52
Proof — 56% (40%+[40% x 40%]) of_ $244,654.50
137,006. 00
*****
In no event shall the Power Company pay more than the limited amount as expressed in paragraph 1 above or more than the actual taxes of the Original Lessor.
If for any tax year no income tax is assessed on the Original Lessor for such year, the Power Company will have no tax obligation to the Original Lessor for such year.
3. The term “income tax” as used in this Article III shall include all taxes based on income including the present Federal Excess Profits Tax, Normal Tax, and Surtax, but shall not include Capital Stock Tax or Declared Value Excess Profits Tax, or any taxes in the nature of a license tax or an excise tax or fee, imposed on the Original Lessor solely on acount of its own direct business operations (excluding its business as lessor of the leased gas and electric properties).
The Power Company covenants that it will pay such share, computed as above provided, of income taxes imposed on the Original Lessor.
9. On April 4,1940, plaintiff and the Power Company had entered into a letter agreement which was attached to the Definitive Agreement and considered by the parties to be one of the lease instruments.
The Definitive Agreement in Article IV thereof provided in part as follows:
All the provisions of the lease instruments shall be construed and interpreted and given effect in accordance with the provisions of this instrument.
If any provision of any of said lease instruments is, or is deemed to be, inconsistent with or in conflict with any provision of this instrument, the provision of this instrument shall control.
All the provisions of the lease instruments, subject to the changes, modifications and interpretations set forth in this instrument and except as otherwise provided in this instrument, are hereby confirmed and continued in full force and effect.
The letter agreement of April 4, 1940, provided in pertinent part as follows:
*663 Referring to the matter of Federal Net Income Tax assessed against the Connecticut Railway and Lighting Company prior to the disaffirmation of the lease of the Connecticut Railway and Lighting Company’s property by the New York, New Haven & Hartford Railroad Company and its Trustees acting under authority of the Court, your Company, as part of its rental, had been paying one fourth of this tax. Due to. the disaffirmation of the lease, the conditions under which this apportionment of the tax was made have so materially changed that, in order to carry out the spirit and intent of the lease and related agreements, we believe that the tax provisions thereof should be interpreted in such a way that the portion of the Connecticut Railway and Lighting Company’s Federal Net Income Tax which you are to pay as part of the rental be determined as follows:
To the operating income from the transportation business of the Connecticut Railway and Lighting Company shall be added its nonoperating income and any amounts which may be received from New Haven Railroad and any of its subsidiaries and affiliates in liquidation of any claims which may have been made by our company in connection with the disaffirmation of the lease, unless, upon a review of these items, it shall be mutually agreed that any such items shall be excluded. To the sum of these items there shall be added the income received from The Connecticut Light & Power Company (the latter amount, exclusive of Federal taxes paid as part of rental). The percentage of the rental paid by your company to this company (exclusive of any amounts included therein for Federal Taxes) of this total shall then be determined, and that percentage shall then be applied to the Federal Net Income tax bill of the Connecticut Railway and Lighting Company. Your company shall pay that proportion of the tax provided, however, that the amount of tax determined in accordance with this method shall not exceed the amount of tax which you would have paid in the event that the original lease situation had not been altered.
10. Pursuant to paragraph Second of Article III of the Definitive Agreement, above-quoted, the Power Company was obligated to pay and did pay as rental to plaintiff the amounts of $52,500 and $181,529.50 for each of the years involved in this case and also the additional sum varying for each year as tabulated below, so that the total base rental accrued for each year was as follows:

*664

For each of the years in suit, the $52,500 amount in the total base rental was collected in advance quarterly in equal installments, and each payment was recorded on plaintiff’s books and records by a debit to cash and a credit to an account entitled Deferred Credit-Rental Under Agreement Dated June 27, 1917. This latter account was closed at the end of each year after transfer each month of one-twelfth of $52,500 to a special rental income account, which account in turn was closed at the end of each year by transfer of the total sum of $52,500 to surplus.
With respect to the sum of $181,529.50 and the additional sum for each year tabulated above, such sums were accrued on plaintiff’s books and records for each of the years in suit in monthly amounts and paid periodically by the Power Company, which resulted in a total credit and debit of such sums to plaintiff’s account entitled Rental Receivable — The Connecticut Light and Power Company, and a total credit to Rental Income — Leased Gas and Electric Property. These same total amounts were transferred each year from income to surplus.
11. For each of the years in suit, plaintiff accrued in monthly amounts on its account entitled Federal Income Tax Receivable — The Connecticut Light and Power Company, total yearly amounts as tax reimbursement by the Power Company under the lease agreements. These accrued amounts, collected in cash from the Power Company in the year subsequent to accrual, were as follows:

Year Accrued amounts

1944-$123,986.52
1945- 123,986.52
1946- 116,104.52
1947- 116,104.52
*665 Plaintiff recorded its tax liability for both rental and other operations by credit to an account entitled Taxes Accrued— Federal Income Tax or to Accrued Income and Excess Profits Tax. The amount applicable to operations of plaintiff other than rental was recorded by debit to Federal Income and Excess Profits Tax.
12. For each of the yearn in suit, plaintiff reported under Gross Income in item “10. Rents” on its Federal income tax returns both the total base rental amount and also the total amount of reimbursement of taxes (expressly designated as Federal Income Tax billed to the Power Company) accrued against the Power Company, summarized as follows:

Under the lease agreements, the Power Company was liable to reimburse plaintiff only for taxes to be paid on a portion of the base rental, which portion amounted to $221,-404.50 for each of the years in suit. The computation of such reimbursement of taxes for each year in accordance with the lease agreements is summarized as follows:

The amount for each year shown in column 3, hereinafter referred to as the “first tax”, was determined by applying the Federal income tax rate for 1944 and 1945 of 40% and for 1946 and 1947 of 38% to $221,404.50, to determine the “first tax” of $88,561.80 for each year 1944 and 1945 and of $84,-133.71 for each year 1946 and 1947.
*666 The amount for each year shown in column 4, hereinafter referred to as the “second tax”, was determined by applying the Federal income tax rate of 40% to the “first tax” of $88,561.80, which produced the “second tax” of $85,424.72 for each year 1944 and 1945, and by applying the 38% rate to the “first tax” of $84,133.71 to determine the “second tax” of $31,970.81 for each year 1946 and 1947.
Plaintiff has never billed the Power Company, nor has the Power Company ever paid plaintiff the amount of taxes paid by plaintiff on account of the inclusion of the “second tax” in plaintiff’s reported gross income for each year in suit. Plaintiff has never remitted to the Power Company any portion of the above-stated base rentals or amounts of tax reimbursements accrued and paid by the Power Company for the years in suit.
By rejecting plaintiff’s claims for refund for the years 1944 through 1947, the Commissioner of Internal Revenue refused to exclude the “second tax” from taxable income and refund the taxes paid thereon.
13. For each of the years in suit, the Power Company paid to plaintiff without being billed the total yearly base rental in periodic payments within the year of accrual.
As to the reimbursement of Federal income taxes accrued on plaintiff’s books and records for each year as above-stated, the Power Company was billed once a year by plaintiff and in the year following each calendar year of accrual, the Power Company paid the total amount of the accrued reimbursement of taxes to plaintiff on the same installment basis as plaintiff’s payment of taxes to the Federal Government.
14. All amounts received by plaintiff from the Power Company under the lease agreements were reported on an accrual basis by the plaintiff on its Federal income tax returns as rental income and the plaintiff paid tax thereon. No part of the tax paid was the result of a deficiency assessment by the Commissioner of Internal Revenue. No part of the amount so received by the plaintiff has been refunded by the plaintiff to the Power Company.
*667 15. On October 14, 1952, the Commissioner of Internal Revenue modified Mimeograph 6779, originally promulgated March 12,1952, by adding paragraphs 3 and 4 below:
To Collectors of Internal Revenue, Internal Revenue Agents in Charge, Heads of Field Districts of the Appellate Staff and others concerned:
1. Section 22 (a) of the Internal Revenue Code provides for the inclusion in gross income of any gains, profits, or income arising out of the ownership or the use of or interest in property whether real or personal. Section 29.23 (a)-10 of Regulations 111 provides that taxes paid by a tenant to or for the account of the landlord for business property are additional rent and constitute a deductible item to the tenant and taxable income to the landlord.
2. Under a contract providing for payment to the lessor of a stipulated rental and any Federal income taxes thereon, the lessor is deemed to have received as rental income not only the stipulated rental, but in addition thereto all Federal income taxes paid by the lessee to, or for the account of, the lessor. The extent of the liability existing between the respective parties is one which must be determined under the general law applicable to contracts of that nature. For Federal income tax purposes, however, the amount to be included in the gross income of the lessor by reason of the taxes paid by the lessee should be determined by reference to the construction given by the parties to the contract under which such taxes are paid. The Bureau will not concern itself with the mechanics used by the respective parties in determining the extent of the lessee’s liability so long as the lessor includes in gross income the total amount of Federal income taxes paid by the lessee. Thus, if A leases to B a parcel of real estate for an annual rental of $100,000 plus any Federal income taxes thereon, and for the year 1952 A and B agree that the total amount of Federal income tax due to be paid by B to, for, or on behalf of A for such year is $65,000, then the total rental for the year 1952 which is to be included in the gross income of A will be deemed to be $165,000.
3. The rule set forth herein is applicable to all types of income payments including, but not confined to payments for personal services, alimony and purchase or rental of property.
4. Under authority contained in section 3791 (b) of the Internal Revenue Code, the provisions of this mimeo *668 graph will not be applied for taxable years beginning prior to January 1, 1952 in determining the amount of gross income of the recipient of an income item on account of the taxes paid by the payor other than the initial tax computed on the stipulated amount, except that any Federal income or excess profits taxes which have been paid on account of the inclusion in gross income of the taxes paid by the payor will not be refunded.
16. Subsequent to 1947, plaintiff did not include the amount representing the “second tax” in its tax returns. The returns for 1948 and 1949 have been examined by a revenue agent, and have been finally closed. The Commissioner of Internal Revenue did not assert any deficiencies in taxes for these years on the ground that the amount of the “second tax” had been incorrectly excluded from these tax returns.
17. On March 29,1945, plaintiff issued and sold $6,000,000 of its secured three percent bonds, receiving therefor a total of $6,090,000. These bonds bore the maturity date of November 15, 1974. They were fully redeemed and retired on December 31,1945, at $6,207,600.
18. In item 14 (Other Income) of Form 1120 (Corporate Income Tax Return) for 1945, the plaintiff included in income the sum of $90,000 as “Premium on secured 3% Bonds.” In item 29 (c) of Form 1120 for 1945 plaintiff deducted a sum which included, as shown by Schedule K attached to the said return, $207,600 as “Premium on Secured 3% Bonds called.” On Form 1121 (Corporate Excess Profits Tax Return) for 1945, in item 9, designated “Income from retirement or discharge of bonds, etc.,” of Schedule A (Excess profits net income computation), under the invested capital method, the plaintiff excluded from excess profits net income the sum of $87,475.50.
19. The amount of $87,475.50 referred to in finding 18 was computed as follows: The bonds had a projected life of 356% months, and plaintiff computed the amortization of the $90,000 premium received on the issuance of the bonds to be $252.45 per month. It was considered that the bonds were retired after having been outstanding ten months. Plaintiff determined that $2,524.50 was deductible as amortization in 1945 from the $90,000 premium received on issuance of the bonds. Plaintiff excluded the remaining amount, *669 $87,475.50 from excess profits net income relying on Section 711 (a) (2) (E) of the Internal Revenue Code of 1939.
20. Paragraph 9 of the specific instructions issued by the Commissioner of Internal Revenue, used in connection with the preparation of excess profits tax returns for 1945, in so far as it is material to this issue, reads as follows:
9. Income from retirement or discharge of bonds, and so forth — Section 711 (a) (1) (C) and section 711 (a) (2) (E) provide for the exclusion of income derived from the retirement or discharge by the taxpayer of any bond, debenture, note, or certificate or other evidence of indebtedness, if the obligation of the taxpayer has been outstanding for more than 6 months, including, in case the issuance was at a premium, the amount includible in income for such year solely because of such retirement or discharge.
21. The deficiency in excess profits taxes in the amount of $82,107.34 and interest of $14,422.77 assessed by the Commissioner of Internal Revenue for the year 1945 as the result of the inclusion by the revenue agent in excess profits net income of $87,475.50 representing the bond premium referred to in paragraph 18 above were satisfied as follows:

22.Plaintiff is the sole owner of the claims asserted in this action and has made no assignments of such claims or any part thereof or interest therein.
CONCLUSION 03? LAW
Upon the foregoing findings of fact, which are made a part of the judgment herein, the court concludes as a matter of law that plaintiff is entitled to recover and judgment will be entered to that effect. The amount of recovery will be determined pursuant to Rule 38 (c) of the Rules of this court.
*670 In accordance with the foregoing opinion and on a memorandum report by the commissioner as to the amounts due plaintiff, an order was entered October 2, 1956, reading in part, as follows:
Now, therefore, it is ordered this second day of October, 1956, that judgment be and the same is entered for the plaintiff for the respective years involved in this case as follows:

1:944 1945 19^6 1941

Income tax_ _ _ $12,148.91 $12,148.91
Declared value excess profits- $2,338.03 _ _ _
Excgss profits_ 28,289.12 $106,389.00 _ _
Deficiency interest _ 7,114. 72 14,147. 20 1, 360. 30 _
Total _ $37, 741, 87 $120,, 536..20 $13, 509. 21 $12,148. 91
together with interest as provided by law for each year; provided, however, that in connection with the amount of recovery in the way of excess profits tax for the year 1945 in the sum of $106,389 with interest, an offset is hereby allowed as an income tax deficiency in the sum of $35,602.75 with interest, which offset results from the excess profits tax adjustment.
By the Court.
Marvin Jones, Chief Judge.