**EXCHANGE PARTS COMPANY OF FORT WORTH, a Corporation**

v.

**UNITED STATES.**

No. 306-57.

United States Court of Claims.
June 8, 1960.

252

Robert Ash, Washington, D. C., Charles H. Burton and Ash, Bauersfeld & Burton, Washington, D. C., on the briefs, for plaintiff.

June A. Murray, Washington, D. C., with whom was Charles K. Rice, Asst. Atty. Gen., James P. Garland and Philip R. Miller, Washington, D. C., on the brief, for defendant.

MADDEN, Judge.

The plaintiff sues for the recovery of manufacturers' excise taxes paid by it during the period November 1, 1951, to December 31, 1954. The plaintiff was not a manufacturer in the ordinary sense of fabricating new products out of new materials. It was one of the large number of enterprises, large and small, which rebuild useful parts for automobiles and other automotive equipment, using mostly items which have been junked or traded in because they were no longer operative, and inserting in them such new parts or usable old parts as are necessary to make them work.

The portion of the plaintiff's business here relevant was the rebuilding of generator armatures, starter armatures, and clutch pressure plates, and complete generators, starters and clutch pressure assemblies. The plaintiff sold the rebuilt armatures and plates, or the complete generators, starters and clutch pressure assemblies, to the wholesale trade. Our question is whether what the plaintiff did in its process of rebuilding these objects constituted the plaintiff a "manufacturer" of them, within the meaning of section 3403(c), as amended, of the Internal Revenue Code of 1939, 26 U.S.C. (1952 ed.) § 3403, and section 4061(b) of the Internal Revenue Code of 1954, 26 U.S.C. § 4061(b), which sections subject automobile "parts and accessories" to the manufactures' excise tax. The fact that the items sold by the plaintiff were automobile accessories is clear. The question is whether the plaintiff "manufactured" them. The statutes do not define the word manufacturer. Treasury Regulations 46 (1940 ed.) section 316.4 says:

"The term 'manufacturer' includes a person who produces a taxable article from scrap, salvage, or junk material, as well as from new or raw material, (1) by processing, manipulating, or changing the form of an article, or (2) by combining or assembling two or more articles."

The plaintiff's method of operation was to disassemble completely the old parts which came to its plant, discarding the unusable pieces and placing the usable pieces in separate bins from which they could be taken for the assembly of a rebuilt part. The plaintiff's processes in rebuilding the items here in question are described in detail in our findings, and only one of them, that relating to generators, will be described in this opinion. It is reasonably typical, although there were, naturally, many differences in the processes used in rebuilding the different items here in question.

The generators rebuilt by the plaintiff in the period involved here were usually received in its plant as dirty, greasy, and

worn-out units. Each unit was disassembled, cleaned, and then sent to the assembly department for the replacement of any worn-out parts. At that point, the fields were replaced with new fields on which excise taxes had been paid or with salvaged fields that were retaped. The fields were inserted in the case by means of field shoes, brushes were placed in the brush racks, the bearing was pressed into the bearing end, and bushings were pressed in the bushing end. Finally, the armature was pressed in, the case was bolted together, and the entire unit was examined for performance.

Aside from plaintiff's rewinding of the generator armature, plaintiff performed no rewinding or machining in rebuilding generators sold by it.

It is fairly evident, considering all the things that the plaintiff did in making a salable and usable generator out of a number of components, themselves useless until subjected to the plaintiff's labor and skill and supplemented by additional material, that it requires no stretch of the meaning of words to say that the plaintiff "manufactured" a generator. The Government urges, and we agree, that it is relevant, in the interpretation of the statute, that the business of rebuilding automobile accessories is big business, and that the products of these rebuilding enterprises compete extensively and successfully with the new products, unquestionably subject to the excise tax, of manufacturers of those new products.

There is an aspect of the case which troubles us greatly. In June 1954, after the plaintiff had been paying the tax on its products for several years, it requested a ruling from the Internal Revenue Service, Excise Tax Division, as to its liability for excise taxes on its sale of generators and starters. It seems to have stated the facts fairly, and received an answer from the Chief, Excise Tax Branch, Internal Revenue Service, as follows:

"In reply to your first question it is considered that no tax is due on the sale by the rebuilder of a rebuilt automobile generator or starter. If the rebuilder rewinds the armatures which he owns and uses them in rebuilding the generators and starters, tax under section 3403(c) of the Code applies to his sale of such rewound armatures.

"In reply to Question 2, where the rebuilder buys armatures tax paid and uses them in the rebuilding of generators and starters, he incurs no liability for manufacturers' excise tax on his sale of the rebuilt generators and starters."

In October 1954 the plaintiff requested a ruling as to the taxability of its sales of rebuilt clutch pressure assemblies. It received a reply from the same official, dated January 19, 1955, who cited Revenue Ruling 54–329, 1954–2 Cum.Bull. 405, published in Revenue Bulletin No. 33 on August 16, 1954, to the effect that "no tax applies to sales of used clutch pressure plate assemblies which are merely disassembled, cleaned, and reassembled, whether or not the clutch pressure plates are machined and worn parts are replaced with tax-paid parts."

In December 1954 the Excise Tax Branch of the Internal Revenue Service, in response to a request from a supplier of the plaintiff for rulings on several subjects pertinent to the plaintiff and other customers of the supplier, advised the supplier that the products were nontaxable. Revenue Ruling 55–98, 1955–1 Cum.Bull. 524, published in 1955, was specific to the effect that if a generator accepted in an exchange is disassembled and cleaned, the armature is rewound or replaced with a rewound armature, and the generator is then reassembled, repainted and sold for $10, the excise tax is applicable only to $1.50 of the sale price, the price of the rewound armature.

In July 1955 the plaintiff filed claims for refund of taxes paid on the products covered by the rulings cited above.

In 1956, Rev.Rul. 56–189, 1956–1 Cum. Bull. 503 was issued. It said:

"The Internal Revenue Service has reconsidered Revenue Ruling 54–

329, C.B. 1954–2, 405, and Revenue Ruling 55–98, C.B.1955–1, 524, particularly with reference to the taxability of reassembled generators containing armatures rewound by the reassemblers and rebuilt clutch assemblies. As a consequence of such reconsideration, the Service has now concluded that the positions taken in these rulings as applied to reassembled generators and rebuilt clutch assemblies are not sound.

"Therefore, it is held that the manufacturers' excise tax applies to the rebuilder's sale of a reassembled generator containing an armature rewound by the reassembler, and to a rebuilt clutch assembly. Revenue Ruling 55–98 is revoked and Revenue Ruling 54–329 is modified accordingly.

"Because of reliance which may have been placed on these Revenue Rulings by generator and clutch rebuilders, the instant ruling will not be applied to sales occurring prior to June 1, 1956, except that any tax which may have been paid by generator rebuilders on generators containing armatures rewound by them or by clutch rebuilders will not be refunded."

On January 7, 1957, the plaintiff's claims for refund were rejected.

■ We have, then, a situation in which the taxing authorities have completely reversed positions taken both in official published Revenue Rulings and in individual rulings made to the plaintiff. Since the position finally taken was probably a sounder interpretation and application of the statute than the earlier position, the earlier rulings may properly be regarded as errors of law. In Automobile Club of Michigan v. Commissioner, 353 U.S. 180, 183, 77 S.Ct. 707, 709, 1 L.Ed.2d 746, the Court held that

"The doctrine of equitable estoppel is not a bar to the correction by the Commissioner of a mistake of law." In Helvering v. New York Trust Co., 292 U.S. 455, 468, 54 S.Ct. 806, 78 L.Ed. 1361, the Court held that Revenue Rulings do not commit the Department to any interpretation of the law, and referred to the cautionary notice published in every Cumulative Bulletin containing the Rulings. See also section 3791(b) of the Internal Revenue Code of 1939, 26 U.S.C. (1952 ed.) § 3791(b).

■ It would seem, then, that the Commissioner had the authority to make his new ruling retroactive, or nonretroactive, as seemed to him wise.

The Commissioner, however, made his ruling nonretroactive as to certain taxpayers and retroactive as to others, including the plaintiff. And the distinction was based solely upon whether the particular taxpayer had, or had not paid his taxes. We dealt with such an asserted basis for differentiating between taxpayers in Connecticut Railway & Lighting Co. v. United States, 142 F. Supp. 907, 135 Ct.Cl. 650, 653–654, and held that the promptly paying taxpayer could not be validly made the object of prejudicial discrimination.

We reach the same conclusion in this case. The plaintiff is therefore entitled to recover, with interest as provided by law, the taxes paid by it, which would not have been payable under Rev.Rul. 56–189, if that ruling had not been made retroactive as to the plaintiff, and judgment to that effect will be entered for the plaintiff. The amount of recovery will be determined pursuant to Rule 38(c), 28 U.S.C.A.

It is so ordered.

JONES, Chief Judge, and DURFEE, LARAMORE, and WHITAKER, Judges, concur.