744 P.2d 451

**GOSNELL DEVELOPMENT CORPORA-TION, Plaintiff/Appellant,**

v.

**ARIZONA DEPARTMENT OF REVE-NUE, Defendant/Appellee.**

**No. 2 CA–CV 87–0026.**

Court of Appeals of Arizona,
Division 2, Department A.

May 21, 1987.

Reconsideration Denied June 30, 1987.

Review Denied Oct. 14, 1987.

Lewis and Roca by Susan M. Freeman and Patrick Derdenger, Phoenix, for plaintiff/appellant.

Robert K. Corbin, Atty. Gen. by Sandra B. Kelley, Phoenix, for defendant/appellee.

OPINION

HOWARD, Presiding Judge.

This is an appeal from the granting of a motion for summary judgment denying Gosnell Development Corporation (Gosnell) a refund of certain transaction privilege taxes.[1] The question here is whether a taxpayer is entitled to a refund of the taxes it paid on the ground that the Department of Revenue refuses or fails to collect similar taxes from others.

The parties have provided us with an agreed statement of facts which was filed in the superior court. During the time relevant to this action, August 1979 to February 1982, A.R.S. §§ 42–1309 and 42–1310(2)(i) imposed a transaction privilege tax on a prime contractor's gross proceeds from the business of contracting. Rather than calculating actual labor payments and excluding them from the taxable base of gross proceeds, A.R.S. § 42–1310(2)(i) provided an "in lieu of labor" deduction from the taxable base equal to 35 percent of the gross proceeds (the "labor deduction"). The sale price of land, not exceeding its fair market value, was also excluded, and a

---

1. Prior to filing this action Gosnell filed a claim for a refund with the Arizona Department of Revenue which was denied because the taxes were not paid under protest. It appealed to the Department's appeals section and thereafter to the Arizona State Board of Tax Appeals.

tax was imposed on the remaining gross proceeds of contracting.

Gosnell is a contractor and during the period in question built and sold single-family residences. They were built on real property owned by Gosnell, rather than custom homes built on owners' lots. Gosnell calculated its tax liability for residential sales by subtracting the sales price of the underlying land, then applying the labor deduction percentage to the remaining gross proceeds. This method is referred to as the "net method."

During the same time period, other home builders, competitors of Gosnell, computed the labor deduction by applying the percentage to gross proceeds before subtracting the sales price of the underlying land. This is referred to as the "gross method." The labor deduction is larger, and thus the tax payment is smaller, when the gross method of calculation is used.

The Arizona Department of Revenue audited one of Gosnell's competitors, Knoell Brothers Construction Company (Knoell Brothers) which had used the gross method of computing its sales tax. Knoell Brothers did not timely appeal the audit determination to the Department of Revenue. Instead, it paid the tax deficiency under protest and brought a refund action against the Department. This action was dismissed because Knoell Brothers had not exhausted its administrative remedies, but by stipulation the action was amended to an action for declaratory relief. One of Knoell's contentions was that the Department was estopped to collect the tax. Prior to February 1980, when the Department changed both its forms and its policy, the Department had considered the land as a deductible element of gross income but not an exclusion from gross income. Relying on the Department's position, the contractors had accepted the 35 percent deduction, which had been empirically established as reasonable. On appeal, Division One of this court ruled that the method used by Knoell was legally incorrect and that there was no estoppel against the state. *Knoell Brothers Const., Inc. v. Arizona Department of Revenue*, 132 Ariz. 169, 644 P.2d 905 (App.1982). The appellate court reversed the trial court's judgment in favor of Knoell Brothers and remanded the case with instructions to enter judgment for the State of Arizona Department of Revenue.

Bizarre is the only way to describe what happened thereafter. Instead of following the mandate of the appellate court as it is required to do, the trial court gave the judgment prospective application only, dating it from March 2, 1982, the date of the appellate court decision. This relieved Knoell from any liability for additional taxes owed for 1980 to 1982. The basis for this unusual judgment is found in a cryptic minute entry by the trial court, attached as an exhibit to the Joint Statement of Facts in the instant case:

"* * *

The Court finds: that based on the record in this case and on matters which the Court can consider by judicial notice, that there exists unique circumstances of great hardship in this cause, which require that the effective date of the judgment herein be made prospective only.

The Court further finds that said unique circumstances of hardship not only will effect [sic] the parties to this action, but an important part of the State's economy."

One deduces from the above minute entry that the trial court found that it would be a hardship and burden on the construction industry in the state to pay the taxes owed. We have searched the statutes and law of this state in vain to find any cases which give the court the power to relieve the taxpayer from payment of taxes which are due and owing because it would be a hardship to pay them.

The judgment on remand by the trial court in the *Knoell Brothers* case is compounded by the inexplicable, unjustified failure of the Department of Revenue to seek relief in a special action, requiring the trial court to adhere to the appellate court's mandate. Not only did it fail to seek such relief, but according to the agreed facts, the Department determined that it would apply the holding in *Knoell Brothers* prospectively to all contractors and that as a

result, other contractors who had improperly included income attributable to the sales price of land in gross proceeds for purposes of computing the 35 percent in lieu of labor deduction (for tax periods ended prior to March 2, 1982) would, if audited, not be required to pay the correct tax. We have, again, vainly searched the statutes and cases and find no power on the part of the Department of Revenue to forgive a person from the payment of the transaction privilege tax.

■ Gosnell contends that the conduct of the trial court and the Department of Revenue has resulted in a denial of equal protection under art. 2, § 13 of the Arizona Constitution and the Fourteenth Amendment to the United States Constitution, entitling it to a refund of the taxes it paid prior to March 2, 1982. The Department contends that Gosnell cannot receive a refund because it did not pay the taxes under protest. See A.R.S. § 42–1339 (repealed 1985); and *Bodco Bldg. Corp. v. Arizona State Tax Commission*, 5 Ariz.App. 589, 429 P.2d 476 (1967). Gosnell counters this argument by claiming that a new statute, A.R.S. § 42–124(B)(2), effective July 1, 1986, changed the necessity to pay taxes under protest and that the statute should be given retroactive effect to allow him to prosecute this action. Assuming arguendo that the old statute applied, we do not believe that Gosnell had to pay its taxes under protest when it had no reason to anticipate that the Department would, at some future date, engage in discriminatory conduct.

■ This brings us to the conduct of the Department. If this were a case of the Department's failing to collect taxes by oversight or negligence or some similar conduct, we do not believe a case could be made that such conduct results in unequal treatment. Here, however, we have a blanket policy of the Department's excusing all contractors, except those who had been so unfortunate as to have paid the correct taxes.

Under well-settled Arizona and federal law, taxing authorities treating taxpayers in the same class differently, as Gosnell has been treated, violate their rights to equal protection under the law. *Hillsborough TP., Somerset County, N.J. v. Cromwell*, 326 U.S. 620, 66 S.Ct. 445, 90 L.Ed. 358 (1946); *Iowa–Des Moines Nat. Bank v. Bennett*, 284 U.S. 239, 247, 52 S.Ct. 133, 136, 76 L.Ed. 265 (1931); *International Business Machines Corp. v. United States*, 170 Ct.Cl. 357, 343 F.2d 914 (1965), cert. denied, 382 U.S. 1028, 86 S.Ct. 647, 15 L.Ed.2d 540 (1966); *Sparks v. McCluskey*, 84 Ariz. 283, 327 P.2d 295 (1958); *Gila Meat Co. v. State*, 35 Ariz. 194, 276 P. 1 (1929). Similarly, "[t]axing authorities may not single out some taxpayers for selective enforcement of tax laws that apply equally to all similarly situated taxpayers." *Maricopa County v. North Central Development Co.*, 115 Ariz. 540, 543, 566 P.2d 688, 691 (App.1977).

The United States Supreme Court explained the result of disparate tax treatment as follows:

> "*The petitioners' rights were violated, and the causes of action arose, when taxes at the lower rate were collected from their competitors.* It may be assumed that all ground for a claim for refund would have fallen if the State, promptly upon discovery of the discrimination, had removed it by collecting the additional taxes from the favored competitors. By such collection the petitioners' grievances would have been redressed; for these are not primarily overassessment. *The right invoked is that to equal treatment; and such treatment will be attained if either their competitors' taxes are increased or their own reduced.* But it is well settled that a taxpayer who has been subjected to discriminatory taxation through the favoring of others in violation of federal law, cannot be required himself to assume the burden of seeking an increase of the taxes which the others should have paid." *Iowa–Des Moines Nat. Bank v. Bennett*, 284 U.S. at 247, 52 S.Ct. at 136, 76 L.Ed. at 273 (Emphasis added).

In *Gila Meat Co.* the court struck down an excise tax which it found unconstitutionally

differentiated between competing and similarly situated taxpayers. The court explained the protection that the equal protection provision of the Arizona Constitution provides:

" '[A]ll laws imposing taxes shall operate in a uniform manner, to the end that no favoritism can be shown or discrimination be practiced.

... Although the Legislature may single out certain ... classes of persons, trades, occupations, and professions, ... the burden upon every person in the class thus selected must be the same.' " 35 Ariz. at 200, 276 P. at 3, quoting *Hager v. Walker*, 128 Ky. 1, 107 S.W. 254, 256–57 (1908).

The Department does not dispute that it is treating identically classified taxpayers differently. It does not dispute that it will permit Gosnell's competitors to claim an improper deduction computed under the gross method, even if an audit discloses a deficiency. Prospective applications of tax rulings with that result are unconstitutional.

In *Exchange Parts Co. of Fort Worth v. United States*, 150 Ct.Cl. 538, 279 F.2d 251 (1960), the court recognized a taxing authority's authority to apply a ruling prospectively only. Id. 279 F.2d at 254. The court also recognized, however, that if a favorable ruling is to be prospectively applied, it must apply equally to all those affected. The court concluded:

"The Commissioner, however, made his ruling nonretroactive as to certain taxpayers and retroactive as to others, including the plaintiff. And the distinction was based solely upon whether the particular taxpayer had, or had not paid his taxes. We dealt with such an asserted basis for differentiating between taxpayers in *Connecticut Railway & Lighting Co. v. United States*, 142 F.Supp. 907, 135 Ct.Cl. 650, 653–654, and held that the promptly paying taxpayer could not be validly made the object of prejudicial discrimination.

We reach the same conclusion in this case. The plaintiff is therefore entitled to recover, with interest as provided by law, the taxes paid by it...." 279 F.2d at 254.

See also *Washington Theatre Club, Inc. v. District of Columbia*, 311 A.2d 492, 495 (D.C.App.1973) ("[I]f there is no substantial difference between the operation of these two organizations, it would amount to an unfair denial of equal tax treatment to the appellant [that only one of two similar businesses should be granted an exemption]. This, if true, should not be permitted.").

There can be no question that under applicable case law, Gosnell has been the victim of unconstitutional discrimination. That unequal treatment must be remedied. In the numerous cases in which a taxpayer was adjudged to have been deprived of equal protection under the law as a result of unequal tax treatment, the taxpayer's remedy is that which places him on a par with the favored taxpayers. *Iowa–Des Moines Nat. Bank v. Bennett*, supra. As the court stated in *International Business Machines Corp. v. United States*, supra:

"If a ruling is or should be prospective only, the past tax can no longer be said to be validly imposed even though, by itself, it falls squarely under the coverage of some tax-imposing [law].... *Conversely, to the extent the amount of the tax has already been collected, it becomes an 'overpayment' ... which is subject to refund, despite the terms of the tax-imposing provision.*" 343 F.2d at 920 (emphasis added).

See also *Connecticut Ry. & Lighting Co. v. United States*, 135 Ct.Cl. 650, 142 F.Supp. 907 (1956) (prospective ruling applied only to taxpayers who had not yet paid taxes was impermissible discrimination; refund necessary to "erase" the discrimination); *Maricopa County v. North Central Development Co.*, supra (taxing directive enforced only against small percentage of those within single class was discriminatory; refund required to equalize treatment). The remedy for denying Gosnell equal treatment is to refund it the additional taxes it paid prior to March 2, 1982, thereby putting Gosnell in an equal position with its favored competitors.

Gosnell has asked for and is entitled to attorney's fees under A.R.S. § 12–348(H)(1), which will be awarded upon its compliance with Rule 21(c), Rules of Civil Appellate Procedure, 17A A.R.S.

The judgment is reversed and the trial court is ordered to enter judgment in favor of Gosnell for an amount consistent with this opinion.

HATHAWAY, C.J., and HERNANDEZ, J., concur.