**CONNECTICUT RAILWAY AND LIGHTING COMPANY**

v.

**The UNITED STATES.**

**No. 595–53.**

United States Court of Claims.

July 12, 1956.

Joseph H. Sheppard, Washington, D. C., for plaintiff. J. Marvin Haynes, N. Barr Miller, F. Eberhart Haynes, Oscar L. Tyree, and Haynes & Miller, Washington, D. C., were on the briefs.

Walter B. Langley, Washington, D. C., with whom was Charles K. Rice, Asst. Atty. Gen., for defendant. Andrew D. Sharpe, Washington, D. C., was on the brief.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and LARAMORE, Judges.

MADDEN, Judge.

In 1906 the plaintiff leased certain gas and electric properties to The Consolidated Railway Company for a term of 999 years. In the lease the lessee covenanted to pay all the taxes which might be imposed upon the lessor in relation to the leased property. By reason of subsequent transfers, subleases, and a merger, the lessee's interest came into the ownership of a company, herein called the Power Company, which assumed all the obligations of the lease. The Power Company and the plaintiff made various agreements modifying the terms of the lease and, on December 30, 1943, entered into a so-called Definitive Agreement to clarify the obligations of the parties as to, inter alia, income taxes imposed upon the lessor.

In the 1943 agreement it was provided in effect, that the lessee would be liable to reimburse the lessor for income and excess profits taxes according to a detailed and complicated method of computation under which, however, the amount to be reimbursed would never be more than the taxes actually attributable to the rent received by the lessor from the lessee. For each of the years involved in this suit, the plaintiff accrued against the lessee the amount of income and excess profits taxes paid by the plaintiff, and reimbursable by the lessee according to the agreement. These amounts were collected from the lessee in the years following their payment by the plaintiff.

In its tax returns, the plaintiff listed as "rents" both the amounts received as rents under the lease, and the amounts reimbursed to it by the lessee for taxes and for the taxes on those taxes. The consequence is illustrated by the following example. A leases property to B for an annual rent of $10,000, B agreeing also to reimburse A for taxes paid by A on account of the lease. The tax rate is a flat 40 percent. A lists on his tax return the $10,000 rent. The tax on that is $4,000, which is reimbursable to him, so he also lists that as rent. The tax on the $4,000 is $1,600, which is reimbursable to him, so he also lists that as

rent, and pays a tax of $640 on it. The instant suit is to recover the payments made by the plaintiff corresponding to the $640 in the example, the "second tax" or tax on a tax. The plaintiff says that the law did not permit the imposition of the "second taxes," that they were paid by mistake, and, timely claims for refund having been made, are recoverable.

■■ To whatever degree reimbursement is carried in this type of case, the amount of the reimbursement is, in all reason, income. Having someone pay one's income taxes is just like having him put money in one's pocket, and if he does it pursuant to a lease, or an employment contract, it is just like rent or salary. But in Old Colony Trust Company v. Commissioner, 279 U.S. 716, 49 S.Ct. 499, 73 L.Ed. 918, the taxpayer argued that if the first reimbursement was taxed, there was no logical stopping place short of infinity, and hence the process of taxing the tax should not be permitted at all. The Government, in its brief on reargument in that case said, at pp. 28, 29:

> "It is true that in earlier years there was a lack of uniformity in treatment and that in some cases the amount of *additional taxes* paid by another was in turn added to the taxpayer's income. Since 1923, however, the practice has been settled and the Treasury Department has added only the *original* tax paid by another, and abandoned any attempt to treat the *additional* tax as additional income."

The Supreme Court noted the Government's statement in its opinion, though of course it did not decide as to the validity of a tax on the second or a more remote tax.

The Government's statement was true, as to the practice of the taxing authorities, and continued to be true until March 12, 1952, when the Commissioner of Internal Revenue issued Mimeograph 6779 (C.B. 1952–1, p. 8), which provided that all Federal taxes paid to, for, or on behalf of a landlord by a tenant must be included in the taxable income of the landlord. This meant, of course, that to

whatever degree the parties, by their agreement, carried reimbursement, the Government would collect taxes on the amount reimbursed. On October 14, 1952, the Commissioner by I. R.–Mimeograph 51 (C.B. 1952–2, p. 65) amended Mimeograph 6779 by making it applicable to all types of income payments including, but not limited to, payments for personal services, alimony, and purchase or rental of property. The October 14 ruling provided, however, that it would not be applied for taxable years beginning prior to January 1, 1952,

> " * * * except that any Federal income or excess profits taxes which have been paid on account of the inclusion in gross income of the taxes paid by the payor will not be refunded."

The plaintiff had paid the taxes for the years here in question, and therefore was not helped by the partial non-retroactivity of the new ruling. The plaintiff complains of the October 14 ruling on the ground that it is a retroactive change in the law by mere regulation, and that, in any event, it discriminates without justification between taxpayers who had paid their taxes and those who had not.

The Government does not rely on the 1952 regulations, hence we do not discuss them further. It says that what the plaintiff received was rent, and was therefore taxable as such. Of course what the plaintiff received was rent, and was just as useful to it as the so-called "basic rent" on which the first tax was computed. But that it was therefore taxable is not so obvious. To say that it was taxable is to ignore 30 years of tax administration in which it was not taxed; is to ignore the fact that because of the Government's representation to the Supreme Court that it was not being taxed, the Court published that representation to all who were interested. We think that the law in action cannot be so divorced from the law in the books as to make the latter applicable only to an occasional unfortunate who happened to pay his taxes on the basis of the law in the books. The Government's disclaimer of reliance upon the 1952 regulation with its express provision for discrimination, cannot erase the fact of the discrimination.

The Government makes something of the fact that the reimbursement agreement in the instant case contained an arbitrary maximum figure beyond which reimbursement would not be made. Of course if a tenant agreed to pay a basic rent plus all the income taxes of the landlord on his income from all sources, that would present a different problem. But if the tenant agrees to pay the landlord's income taxes only on a stated proportion of the rent, that seems to us to present the same problem as if he agreed to pay such taxes on all of the rent.

The second part of the plaintiff's case relates to the disallowance by the Commissioner of Internal Revenue of a deduction from the plaintiff's excess profits net income for the year 1945 of the unamortized portion of the premium on certain bonds issued by the plaintiff.

On March 29, 1945, the plaintiff issued and sold $6,000,000 of its bonds, receiving for them $6,090,000. They bore the maturity date of November 15, 1974. On December 15, 1945, they were redeemed and retired by the plaintiff, at a cost of $6,207,000. In the plaintiff's corporate excess profits tax return for 1945, the plaintiff excluded from its excess profits net income the sum of $87,475.50.

The $87,475.50 figure was arrived at by amortizing the $90,000 premium received by it on the issue of the bonds, over the 356½ months which the bonds would have stood out, if they had not been called and redeemed, the amortization coming to $252.45 per month. They were treated as having been outstanding for 10 months, hence $2,524.50 of the premium of $90,000 was already amortized, leaving an unamortized amount of $87,475.50.

Section 711(a) (2) (E) of the Second Revenue Act of 1940, 54 Stat. 974, 977, as amended 56 Stat. 903, relating to the excess profits tax, says:

> "(E) *Income from retirement or discharge of bonds, and so forth.*

There shall be excluded, in the case of any taxpayer, income derived from the retirement or discharge by the taxpayer of any bond, debenture, note, or certificate or other evidence of indebtedness, if the obligation of the taxpayer has been outstanding for more than 6 months, including, in case the issuance was at a premium, the amount includible in income for such year solely because of such retirement or discharge; * * *."

The Government says that because the issue at a premium of $90,000 and the redemption at a loss of $207,000 both took place in the same taxable year, the two transactions should be "netted" and they result in a net loss of $117,000. There was, therefore, no *income* accruing because of the retirement of the bonds. For income tax, as distinguished from excess profits tax, purposes, the two transactions would be, in effect, set off against each other.

The plaintiff urges that Congress, recognizing that the unusual sort of gains resulting from the redemption of bonds would not come within the reason of the excess profits law, intended that such gains, though for income tax purposes they would be taxable, or would reduce loss deductions, should not be counted at all for excess profits tax purposes, either as taxable gains, or as offsets against deductible losses. We are not free from doubt, but we think the statutory language favors the plaintiff. The fact that the statute requires that the bonds should have been outstanding only six months indicates that Congress was not ruling out the possibility of the issue and the redemption both taking place within the same taxable year.

The plaintiff is entitled to recover on the claims involved in both issues discussed in this opinion, with interest as provided by law, and judgment will be entered to that effect. The amount of the judgment will be determined in further proceedings pursuant to Rule 38(c), 28 U.S.C.A.

It is so ordered.

JONES, Chief Judge, and LARAMORE, WHITAKER and LITTLETON, Judges, concur.