**Robert F. WAGNER, Jr.**
v.
**The UNITED STATES.**
No. 195–63.

United States Court of Claims.
Dec. 15, 1967.

Kenneth W. Moroney, Washington, D. C., for plaintiff.

Gilbert W. Rubloff, Washington, D. C., with whom was Asst. Atty. Gen. Mitchell Rogovin, for defendant.

Before COWEN, Chief Judge, and LARAMORE, DURFEE, DAVIS, COLLINS, SKELTON, and NICHOLS, Judges.

## OPINION

PER CURIAM:

This case was referred to Trial Commissioner (now Judge) Herbert N. Maletz with directions to make findings of fact and recommendation for conclusions of law. The commissioner has done so in a report and opinion filed on December 29, 1966. Exceptions to the commissioner's findings and recommended conclusions of law were filed by plaintiff, and the case has been submitted to the court on oral argument of counsel and the briefs of the parties.

Our commissioner's opinion [1] fell into two main divisions. In the first, he held that as a matter of statutory construction, the gift tax, under Sections 1000(a) and (b) of the Internal Revenue Code of 1939, 26 U.S.C. (1952) § 1000(a) and (b), applied to the irrevocable election by a retiring United States Senator to accept reduced annuities under the United States Civil Service Retirement System and the Employees Retirement System of the State of New York, in order to obtain for his son survivor's annuities for his life upon the Senator's death. In the second, he further concluded that there was no retroactive discrimination in the assessment and collection of the tax so as to render the levy invalid. Both branches were stated, of course, in response to the taxpayer's strenuously urged contentions. Both involved somewhat novel and controversial issues.

Before us the taxpayer explained in his reply brief and in oral argument that he did not expect to prevail on the first issue, considered separately. That is, absent the showing of discrimination he claimed he had made, he did not believe the facts in the record demonstrated that the asserted tax was not lawfully assessed. This concession makes it unnecessary for us to inquire into the matter contained in the first branch of our commissioner's recommended opinion, and we do not do so. Dispositive of the case is our holding that there was no such discrimination shown in the administration of the tax as the taxpayer urges. Since we are in agreement with the opinion and the recommendation of the commissioner as to this decisive issue, with modifications, we hereby adopt the same, with modifications, as the basis for our judgment in this case, as hereinafter set forth.

In Select Tire Salvage Co., Inc. v. United States, Ct.Cl., 386 F.2d 1008, decided this day, we passed on an issue of discrimination which is different from that here involved. There, in construing an ambiguous statute, we found that one

---

1. The concurring opinion of DAVIS, Judge, in which DURFEE, Judge, concurs, follows the opinion of the Trial Commissioner which has been modified and adopted by the court.

possible interpretation would be discriminatory, and preferred the other in part on that account. Whatever faint suggestion there was in that record that the Commissioner of Internal Revenue had not applied his position uniformly to all taxpayers at all times, was in no way a factor in our decision, the discrimination being thought to be against importers as a class, whoever they were and whenever they imported. Here, we assume the taxpayer's position as now stated, that the statute is *per se* unambiguous, and inquire whether discrimination appears, such as to invalidate the tax, from alleged failure to enforce it uniformly at all times against all persons similarly situated with the taxpayer. Clearly this issue is unrelated to anything in *Select*, and the results we reach are in no way inconsistent.

Plaintiff in oral argument threw out a suggestion not urged, or at most only implied, before our commissioner and in the briefs: that the decision to assess a deficiency against this plaintiff was a direct consequence of the previous non-success of the Internal Revenue Service in Higgs Estate v. Commissioner of Internal Revenue, 184 F.2d 427 (3d Cir. 1950), and Commissioner of Internal Revenue v. Estate of Twogood, 194 F.2d 627 (2d Cir. 1952). Both cases held that elections under circumstances much like those here involved did not effect transfers to survivors taking effect at or after death, making the value of their interests taxable to the transferors' estates, on their decease, under the Estate Tax laws. The causal connection between these holdings and the defendant's position herein is a matter for surmise only. Suppose, however, that defendant did say but little about the possible application of the gift tax to such transactions before losing these two cases. That would not be surprising or necessarily iniquitous, if it had expected the transfers, as it regarded them, to generate more revenue under the Estate Tax. It would perhaps have been wasteful to search for taxable gifts of this kind as long as any tax recovered was expected to be a credit on the Estate Tax ultimately due. Herzog v. Commissioner of Internal Revenue, 116 F.2d 591, 595 (2d Cir. 1941). It is not discrimination for the Commissioner to occupy a retreat position only after he has been forced out of an advance position. Taxpayer's surmise, if correct, largely exonerates the Internal Revenue Service of the charge of discrimination so far as it relates to supposed failure effectively to apply the Gift Tax to elections made at materially earlier dates than the one here involved. However, the Commissioner of Internal Revenue may, if he thinks a former practice wrong, modify it to the disadvantage of taxpayers even in the absence of any authoritative court decision to be adjusted to. This may result in identical transactions occurring at different times under the same statute getting different tax treatment. Suppose the taxpayer had proved (as he did not) a clearly enunciated policy, earlier in the life of the Gift Tax, not to tax the elections here involved. This would have had less bearing on the asserted issue of discrimination than on the abandoned issue of statutory construction. Such discrimination as will invalidate a tax assessment requires a solid showing that is completely missing here. Where a taxpayer claims that an unambiguous tax statute is invalid as applied to him solely because of discriminatory nonapplication to others, he must, to prevail, show one of the situations involved in our decided cases, or one that is *ejusdem generis*. See our commissioner's opinion, infra, and authorities cited in footnote 7 therein.

Plaintiff therefore is not entitled to recover and his petition is dismissed.

Commissioner MALETZ'S opinion[2], as modified by the court, is as follows:

This is a suit to recover federal gift tax and deficiency interest totaling $12,-390.87 which was paid by plaintiff for

---

2. The opinion, findings of fact, and recommended conclusion of law are submitted under the order of reference and Rule 57(a).

the year 1949.[1]  Two questions are presented: (1) whether irrevocable elections exercised by plaintiff's father to accept reduced annuities under federal and state contributory retirement systems so that plaintiff as survivor-annuitant would also receive annuities commencing with his father's death constituted transfers subject to a gift tax under sections 1000(a) and (b) of the Internal Revenue Code of 1939, 26 U.S.C. (1952) § 1000(a) and (b); and (2) whether, in any event, plaintiff was the object of retroactive discrimination in the assessment and collection of the tax so as to render the levy invalid as a deprivation of his right to equal protection of the law.

Robert F. Wagner, Sr., father of the plaintiff, retired as a member of the United States Senate in June 1949. At the time of his retirement he was a contributing member of both the United States Civil Service Retirement System and the Employees' Retirement System of the State of New York. Upon his retirement, Senator Wagner made an irrevocable election under both retirement systems to accept a smaller lifetime annuity than would otherwise have been paid to him in order to obtain for his son an annuity for his life upon Senator Wagner's death. The two annuities payable to plaintiff under the election had a value of $44,429.17 in 1949.

Senator Wagner did not file a gift tax return for the year 1949. He died in 1953. After auditing the decedent's estate tax return, the Internal Revenue Service, in 1958, advised the plaintiff, as executor of his father's estate, that the 1949 designations constituted taxable gifts, and that a gift tax return should have been filed. The plaintiff subsequently filed a gift tax return, but reported no taxable transfers and no tax due. The Internal Revenue Service then assessed a gift tax deficiency and deficiency interest against plaintiff which was paid. After a timely refund claim was filed and rejected, this suit followed.

As to the first question, whether the irrevocable election made by the decedent constituted a transfer subject to gift tax, in oral argument taxpayer's counsel conceded that a gift had been made.

Left for discussion is the question of whether there was retroactive discrimination in the assessment and collection of the tax so as to render the levy invalid. Plaintiff's position is that it was the settled administrative policy and practice of the Commissioner of Internal Revenue under the 1939 Code to treat the designations of survivor-annuitants as *not* subject to the gift tax, and that by virtue of the imposition of the tax in the present case, plaintiff was singled out retroactively for discriminatory treatment. However, as seen below, there is a total absence of any proof to indicate that there was ever a policy not to tax such transfers or that the Commissioner ever knowingly authorized or permitted a taxpayer to avoid the tax here imposed. Indeed it affirmatively appears that to the extent the question ever arose, it was resolved in such manner as to result in the imposition of the tax. Thus, in the 1940's when an inquiring corporation requested advice regarding its pension plan, the Bureau replied that the irrevocable election of a retiring employee to accept a reduced annuity constituted a taxable gift. Also, on December 21, 1943, a Deputy Commissioner letter, which was confirmed by a Commissioner letter of October 9, 1946 (CCH Federal Estate and Gift Tax Reporter, par. 3230.53), concluded that where the designation was revocable at the annuitant's election, the gift was incomplete and hence not subject to the tax—the clear inference being that had the designation been irrevocable the gift tax would have been applicable.

Plaintiff points out though that the Commissioner was aware of survivor-an-

---

1. The gift tax deficiency was collected from plaintiff as transferee of the property of the donor, pursuant to section 1025 of the Internal Revenue Code of **1939, 26 U.S.C.** (1952) § 1025.

nuitant designations under a wide diversity of government and private pension plans and despite that never issued any public pronouncements in the form of Treasury regulations, published rulings or otherwise to the effect that such designations would be treated as transfers subject to the gift tax prescribed by the 1939 Code. His failure to do so, plaintiff argues, indicates not only the absence of a policy to impose the gift tax but a conscious and affirmative policy of *not* imposing a gift tax on survivor-annuitant designations. But this argument misconceives the nature, purpose and scope of Treasury regulations and revenue rulings. In the first place, interpretative regulations, which are promulgated by the Treasury Department as a general guide, are not intended to nor can they possibly deal with each and every specific issue which might come before the revenue officer. Instead, regulatory language is often phrased broadly so that its application will be general rather than specific. And while a regulation may contain examples of how the statute is to be applied, the Treasury Department does not attempt to delineate every possible transaction which would come within the statutory purview. Thus, Treasury Regulations 108 pertaining to the gift tax provision here involved (*i. e.*, section 1000(b) of the 1939 Code) set out only eight illustrations of instances in which the statute is applicable, although quite obviously there are numerous other ways in which a gift may be made. Nor can revenue rulings deal with each specific issue that might come before the revenue officer inasmuch as the issuance of a ruling (either public or private) is not normally instituted by the Internal Revenue Service itself, but is ordinarily occasioned by a request from an inquiring taxpayer and covers only the specific circumstances described in the ruling.[2]

Further, plaintiff's argument assumes that the imposition of a gift tax in connection with the irrevocable designation of a survivor-annuitant is of such administrative significance as to require public pronouncement. The fact is that because of the large lifetime exemption ($30,000), as well as the substantial annual exclusion ($3,000 for each beneficiary) allowed all donors (26 U.S.C. (1952) §§ 1003(b) (3), 1004(a) (1) ),[3] it would appear that all but a small fraction of those making such designations transfer annuity rights too small to yield any gift tax.[4] Moreover, there is no reason to believe that the Bureau of Internal Revenue regarded the present question as presenting a difficult legal issue, particularly since it had indicated from the outset that the statute was to be broadly construed; that the purchase of an annuity for another or the irrevocable assignment of the proceeds of a life insurance policy constituted a taxable gift; and that a revocable designation of a survivor-annuitant did not constitute a completed gift but only because the annuitant retained the power to change the beneficiary of the survivorship interest. Indeed, in advising the inquiring corporation in the 1940's that the irrevocable election of a retiring employee to accept a reduced annuity constituted a taxable gift, the Bureau of Internal Revenue evidently considered the matter as not sufficiently significant to warrant publication of the ruling.

2. See Rogovin, *The Four R's: Regulations, Rulings, Reliance and Retroactivity*, 43 Taxes 756 (1965). See also annual Internal Revenue Service Cumulative Bulletins.

3. While the annual exclusion does not apply to gifts of future interests (id., § 1003(b) (3)), its availability allows a donor to allocate gifts of present interests to the annual exclusion, thereby allowing for larger tax-free gifts of future interests under the lifetime exemption.

4. The high value of the annuities which were transferred to plaintiff by virtue of his father's elections was undoubtedly affected by the substantial salary earned by his father as a United States Senator; by the designation of plaintiff as survivor-annuitant under two separate plans; and by the disparity in age between plaintiff and his father.

It is next argued that since the designations of survivor-annuitants must have come to the attention of examining agents either through voluntary compliance or by audit of estate and income tax returns, the government's inability to ascertain from its files the extent to which such returns were filed and how the designations were treated indicates a conscious and affirmative policy and practice of not treating them as taxable gifts. It is clear, however, that there is no feasible way to ascertain the number of taxpayers who report designated transactions or to determine how examining officers have treated such matters on audit without examining each one of hundreds of thousands of filed returns. This court declined to impose this burden on the government since other more practicable discovery methods were available to and were, in fact, utilized by the plaintiff.[5] While considerable latitude was allowed plaintiff through discovery proceedings to develop his assertion, there is a total absence of any proof that gift tax examiners had been instructed to treat the irrevocable designation of a survivor-annuitant as a non-taxable transfer for gift tax purposes or that the Internal Revenue Service ever knowingly authorized or permitted a taxpayer to avoid the tax here imposed.

Plaintiff also contends that the testimony of Ellis W. Manning, a former head of the Interpretative Division of the Chief Counsel's Office, Bureau of Internal Revenue, provides added indication of the existence in 1949 of a conscious and affirmative policy and practice of not imposing the gift tax on survivor-annuitant designations. Manning's testimony was that in 1949 he participated in some conferences concerning the taxability of survivor-annuitant designations for *estate tax* but not gift tax purposes; and that "They could have been holding the gift tax proposition back because the estate tax problem * * * came up just before I left [in 1949]. * * * [T]here was legislation on it in '54." Leaving aside the fact that this testimony is so vague and indefinite as to have little probative value, it is difficult to understand how it supports plaintiff's position in any event. For if this testimony means (as plaintiff says) that the gift tax matter had not yet come up for consideration in 1949, then it cannot be understood how there could then be a conscious and affirmative policy and practice of not imposing the gift tax on survivor-annuitant designations or how any subsequent decision to tax such designations would discriminate against plaintiff.[6] Manning also testified that he had no knowledge or recollection as to whether, during his tenure in the Interpretative Division, there was any administrative policy or practice with respect to the taxability of survivor-annuitant designations under the gift tax provisions of the 1939 Code. From this plaintiff would have the inference drawn that in 1949 there was no policy or practice of imposing the gift tax on survivor-annuitant designations. But as Manning's further testimony makes clear, gift tax policies and practices were frequently formulated by an-

---

5. Plaintiff contends that since the defendant denied the allegations as to the existence of the administrative practice, and since the facts and means of proof were peculiarly within its knowledge and control, the burden of proof shifted to the defendant to show that as a matter of settled administrative practice under the 1939 Code survivor-annuitants were treated as subject to the gift tax. The argument lacks merit, especially since the plaintiff was allowed opportunity by the court, through discovery, to explore fully the administrative mechanism and to obtain whatever information and documents that might support his contentions.

6. Even if it were assumed that through 1949 the Bureau had no occasion to formally consider the gift tax consequences of an irrevocable designation of a survivor-annuitant, any subsequent determination as respects that matter would not have discriminated against plaintiff absent a showing (which has not been made) that the Bureau reached one result in respect of the designation made by plaintiff's father and a different result in respect of similar designations made by others.

other unit in the Bureau of Internal Revenue without his ever being advised thereof and he simply did not know or have any reason to believe that that unit's practice was to treat such designations as non-taxable for gift tax purposes.

It is evident that plaintiff has failed to establish that there was ever a policy or practice not to tax such transfers. Similarly, there is no evidence to sustain the allegation that, whatever the practice in 1949, plaintiff was thereafter singled out for imposition of the tax. Thus, even assuming plaintiff had shown that the Internal Revenue Service maintained a policy not to tax such transfers in 1949, there is nothing to indicate that any subsequent change in position affected plaintiff to the exclusion of all others similarly situated.[7] By the same token there is nothing to indicate that the Service delayed reaching a determination regarding the transfer made by plaintiff's father; rather, it promptly advised plaintiff of the outstanding liability once it learned that such a transfer had been made.[8]

Nor did discrimination result from the circumstance that other persons who had made similar designations may have never paid a gift tax either because they never thought to file a gift tax return (and the Service never learned of the matter) or because the Service never sought to concentrate its collection efforts on those types of transfer. It is inherent in any voluntary system of taxation that there will be those who, knowingly or not, fail to file the required tax returns. The fact that all taxpayers or all areas of the tax law cannot be dealt with by the Internal Revenue Service with equal vigor and that there thus may be some taxpayers who avoid paying the tax cannot serve to release all other taxpayers from their obligation. As this court said in Kehaya v. United States, 355 F.2d 639, 641, 174 Ct.Cl. 74, 78 (1966): "The Commissioner's failure to assess deficiencies against some taxpayers who owe additional tax does not preclude him from assessing deficiencies against other taxpayers who admittedly owe additional taxes on the same type of income. The Commissioner might reasonably conclude that a reaudit of * * returns * * * would not produce sufficient additional revenue to justify the undertaking. Such a decision would certainly not be arbitrary."

It is concluded that plaintiff's petition should be dismissed.

DAVIS, Judge (concurring):

I would adopt the whole of Commissioner (now Judge) Maletz's opinion (with minor modifications it is unnecessary to state now.) The taxpayer's concession, as I understand it, is not that the gift-tax statute, properly construed, covers the situation before us but merely that the statute is broad enough in its literal terms. To me that position still leaves in dispute the correctness of the construction adopted by the Internal Revenue Service, and the court should resolve that dispute. Since I agree, in largest part, with Commissioner Maletz's treatment of the question, I would follow it

---

7. By contrast, where the Internal Revenue Service made a conscious determination to tax one taxpayer (or group of taxpayers) retroactively while excluding all others similarly situated from retroactive application of the law, the levy was held invalid on the basis of prejudicial discrimination. See e. g., Connecticut Railway and Lighting Co. v. United States, 142 F.Supp. 907, 909, 135 Ct.Cl. 650, 653–654 (1956); Exchange Parts Company of Fort Worth v. United States, 279 F.2d 251, 254, 150 Ct.Cl. 538, 543 (1960); cf. Knetsch v. United States, 348 F.2d 932, 940, 172 Ct.Cl.

378, 391–392 (1965), cert. denied, 383 U.S. 957, 86 S.Ct. 1221, 16 L.Ed.2d 300 (1966). See also International Business Machines Corp. v. United States, 343 F.2d 914, 170 Ct.Cl. 357 (1965), cert. denied, 382 U.S. 1028, 86 S.Ct. 647, 15 L.Ed.2d 540 (1966); cf. Bornstein v. United States, 345 F.2d 558, 170 Ct.Cl. 576 (1965).

8. Although the gift was made in 1949, this fact was not disclosed to the Service until the audit of the estate tax return, at which time plaintiff was notified of the Service's determination.

and make it part of the opinion of the court.

DURFEE, Judge, concurs in the foregoing concurring opinion.

COLLINS, Judge, took no part in the decision of this case.

## FINDINGS OF FACT

1. This is a timely suit for refund of a gift tax and interest thereon totaling $12,390.87, paid by plaintiff in 1961 pursuant to a deficiency assessment for the taxable year 1949.

2. Robert F. Wagner, Sr., deceased, retired as a member of the United States Senate in June 1949. At the time of his retirement the decedent was a contributing member of both the United States Civil Service Retirement System and the Employees' Retirement System of the State of New York. Contemporaneously with his retirement, the decedent made an irrevocable election under each of said retirement systems pursuant to which he became entitled to a reduced retirement allowance for life and, at his death, the plaintiff, as the designated survivor-annuitant, became entitled to an annuity for his life. The two annuities payable to plaintiff under the decedent's election had a value of $44,429.17 in 1949.

3. Under the federal laws and regulations governing U. S. Civil Service retirement benefits in 1949, the election to designate (and the designation of) a survivor-annuitant by any federal government employee in 1949 became irrevocable at the time such election was filed with, and accepted by, the Civil Service Commission.

4. At the time of the decedent's retirement and the irrevocable designation of plaintiff as survivor-annuitant in 1949, there were in operation, in addition to the United States Civil Service Retirement System, pension plans provided by federal law for the various branches of the Armed Services of the United States, the pension plan for the railroad industry authorized by the Railroad Retirement Act, as well as retirement plans established by many large industrial organizations in the United States, and others, regarding which the government had full knowledge, including its knowledge of the almost innumerable designations of survivor-annuitants made under the provisions of many such plans prior to the designation by the decedent of the plaintiff as survivor-annuitant under the provisions of the United States Civil Service Retirement System and the Employees' Retirement System of the State of New York involved here.

5. The only witness at the trial of the case was Ellis W. Manning, who was called by plaintiff in an effort to establish that in 1949 it was the practice or policy of the then Bureau of Internal Revenue not to treat the designation of a survivor-annuitant under a pension plan as subject to the gift tax provisions of the Internal Revenue Code of 1939. His testimony showed the following:

(a) Manning was head of the Interpretative Division, Chief Counsel's Office, Bureau of Internal Revenue, from 1940 until his retirement from government service in 1949. This division functioned in an advisory capacity to the Chief Counsel or to the Commissioner of Internal Revenue in matters of establishing or changing policies or administrative practices with respect to taxability and, therefore, tried to keep abreast of all existing policies and administrative practices in order to discharge its advisory and interpretative function. However, the Interpretative Division was not the only unit within the then Bureau that functioned in an advisory capacity to the Commissioner in matters of establishing or changing policies or administrative practices with respect to taxability. For example, estate and gift taxes were administered by an Estate and Gift Tax Unit that was independent of the Chief Counsel's Office and was headed by a Deputy Commissioner who was directly answerable to the Commissioner. The Deputy Commissioner in charge of the unit had discretion as to whether or not to refer a matter to the Chief Counsel's

Office for advice and frequently did so. However, he frequently made decisions for himself without consulting with anyone in the Chief Counsel's Office or its Interpretative Division. Thus, in the estate and gift tax field, the Interpretative Division was not always involved when it was contemplated that the Bureau would resolve a debatable issue of taxability by ruling or otherwise.

(b) It was one of Manning's responsibilities as head of the Interpretative Division to approve all recommendations issuing from the Division. He had three assistants who had different jurisdictions, and he himself personally handled income and estate tax matters, and perhaps gift tax matters, although he "never was very conscious of the gift tax."

(c) Manning had no knowledge or recollection as to whether, during his tenure in the Interpretative Division, there was any administrative policy or practice, by ruling or otherwise, with respect to the taxability of survivor-beneficiary designations under the gift tax provisions of the 1939 Code.

6. At the time of Manning's retirement in 1949, there was on file with the United States Civil Service Commission a designation of his wife as survivor-beneficiary. Since then Manning has received payments under the Civil Service Retirement Plan. However, Manning never filed a gift tax return with respect to the 1949 designation of his wife as survivor-annuitant with respect to such filing; in his words, "I never gave it a thought to my knowledge."

7. It is concluded that Manning was not in a. position to, nor did he in fact, possess any meaningful knowledge or information as to the practice or policy of the Bureau of Internal Revenue with respect to the taxability of survivor-beneficiary designations under the gift tax provisions of the 1939 Code.

8. On February 9, 1945, the Deputy Commissioner of Internal Revenue who headed the Bureau's Estate and Gift Tax Unit, in response to a taxpayer's letter of December 29, 1944, issued a private letter ruling to that taxpayer holding that "the election of a survivorship pension under a provision of the * * * [taxpayer's] Pension Plan then in effect, constituted a gift to the employee's spouse." The ruling also prescribed the method of computing the value of the gift. On March 12, 1948, the Deputy Commissioner of Internal Revenue issued another private letter ruling to the same taxpayer, which letter noted that certain amendments were made to the plan in 1946, and responded to general collateral questions prompted thereby in regard to the effective date of the gift and its valuation.

9. The decedent herein, Robert F. Wagner, Sr., died in 1953. On or about July 10, 1958, the plaintiff, as executor of the decedent's estate, filed a gift tax return for 1949, the Commissioner of Internal Revenue having demanded such filing after determining that the decedent's 1949 designations of plaintiff as survivor-annuitant constituted gifts to plaintiff. Thereafter, by letter dated December 6, 1960, the Commissioner assessed against plaintiff as transferee-donee a gift tax deficiency of $7,368.31 with respect to that return and collected the tax, plus interest of $5,022.56, on August 28, 1961. Plaintiff's claim for refund was timely filed on or about October 13, 1961.

## CONCLUSION OF LAW

On the foregoing findings of fact, which are made a part of the judgment herein, the court concludes as a matter of law that plaintiff is not entitled to recover, and his petition is dismissed.