**Rosemary W. AUSTIN, formerly Rosemary W. Hoyle, (Charles P. Sacher and Florida National Bank at Miami as Co-Personal Representatives of the Estate of Rose Mary Wilson Austin, a/k/a Rosemary W. Austin, formerly known as Rosemary W. Hoyle, substituted in the place and stead of Rosemary W. Austin, formerly Rosemary W. Hoyle, deceased), Plaintiff-Appellant,**

v.

**UNITED STATES of America, Defendant-Appellee.**

**No. 78–1179.**

United States Court of Appeals, Fifth Circuit.

Feb. 6, 1980.

---

Walton, Lantaff, Schroeder & Carson, Charles P. Sacher, Nicholas E. Christin, Miami, Fla., for plaintiff-appellant.

Jack V. Eskenazi, U. S. Atty., Miami, Fla., M. Carr Ferguson, Asst. Atty. Gen., Gilbert E. Andrews, Act. Chief, Richard W. Perkins, Atty., Mary L. Jennings, Atty., Richard D. Buik, Atty., Tax Div., U. S. Dept. of Justice, Washington, D. C., for defendant-appellee.

Before MORGAN, REAVLEY and HATCHETT, Circuit Judges.

HATCHETT, Circuit Judge:

Taxpayer appeals a district court judgment in a $21,461 tax refund case dismissing the action for failure to state a claim. Taxpayer alleges that the Internal Revenue is attempting to retroactively apply minimum tax statutes in deprivation of taxpayer's due process and equal protection rights. Finding no constitutional deprivation and no claim upon which relief may be granted, we affirm.

Taxpayer, on December 10, 1970, received a long term capital gain of $1,162,964 in a liquidation transaction involving a Liberian corporation consummated in the Bahamas. The transaction was deemed a "merger" under Liberian law, but based on a pre-merger private ruling given by the Internal Revenue, the transaction was treated as a sale of stock for income tax purposes. Taxpayer paid regular income tax on one-half the gain, but paid no minimum tax on the remainder.

For the 1970 taxable year, to determine the amount of minimum tax due, I.R.C. § 56 required a taxpayer to total items of tax preference income, subtract an exemption of $30,000, and apply a 10% rate to the remainder. I.R.C. § 57 describes the items of tax preference that are subject to the minimum tax. I.R.C. § 58(g)(2) is the disputed provision.[1] In 1970 it provided that capital gains attributable to sources within any foreign country or possession of the United States should not be taken into account if, under the tax laws of such country, the net gain was not accorded preferen-

---

1. Section 58(g)(2), as originally enacted, provided in pertinent part that:
SEC. 58. RULES FOR APPLICATION OF THIS PART.
    *    *    *    *    *    *
(g) *Tax Preferences Attributable to Foreign Sources.*—
    *    *    *    *    *    *
(2) *Capital gains and stock options.*—For purposes of section 56, the items of tax preferences set forth in paragraphs (6) and (9) of section 57(a) which are attributable to sources within any foreign country or possession of the United States shall not be taken into account if, under the tax laws of such country or possession—

    *    *    *    *    *    *

(B) in the case of the item set forth in paragraph (9) of section 57(a), preferential treatment is not accorded gain from the sale or exchange of capital assets (or property treated as capital assets).

tial treatment. Neither Liberia nor the Bahamas imposed any income tax.

After the "merger", but prior to the filing of taxpayer's 1970 return, the Internal Revenue issued a proposed regulation under Section 58 stating that capital gains from foreign countries imposing no income tax was not a tax preference, since no preferential treatment was accorded it. The Internal Revenue reversed its position on June 24, 1971, and proposed that capital gains having their source in a country imposing no income tax was a tax preference item.

On December 10, 1971, Congress amended Section 58(g)(2) as if the amendment had been enacted with the original Section 58(g)(2) applicable to tax years beginning in 1970.[2] This amendment placed no tax treatment under the definition of preferential treatment.

In 1974, taxpayer received a notice of deficiency. The nine other taxpayers involved in the same "merger" were not all charged with a tax deficiency under Section 58(g)(2). The trial court dismissed the complaint ruling that retroactive application of Section 58(g)(2) did not violate taxpayer's due process and equal protection rights. The correctness of this ruling is at issue.

Taxpayer argues that the district court erred because:

(1) amendment of Section 58(g)(2) of the Code by the Revenue Act of 1971 was retroactive application violative of taxpayer's constitutionally guaranteed rights to due process; and,

(2) it was a denial of equal protection to require the taxpayer to pay the minimum tax while not requiring all ten other equally affected taxpayers to pay the minimum tax.

**2.** 1971 Amendment. Subsection (g)(2).

Pub.L. 92–178 provided that for purposes of this paragraph, preferential treatment is accorded such items which are attributable to a foreign country or possession of the United States if such country or possession imposes no significant amount of tax with respect to such items.

I.

■ We hold that the 1971 amendment of Section 58(g)(2) of the Code constituted a clarification, rather than a change, in the provisions of this statute. There was no retroactive application of the minimum tax. Our view is supported by the legislative history of Section 58(g)(2).[3] It is clear from this legislative history that the capital gain income here was subject to the minimum tax before the 1971 amendment. The Senate Report concerning Section 58(g)(2), both before and after the 1971 amendment, interpreted "preferential treatment" the same. The amendment itself was specifically made applicable to taxable years beginning after December 31, 1969. Revenue Act of 1971. P.L. 92–178, 85 Stat. 497, Sec. 308(b).

Under *Dixon v. United States*, 381 U.S. 68, 85 S.Ct. 1301, 14 L.Ed.2d 223 (1965), the Internal Revenue can retroactively correct a mistake in law by a regulation or ruling. Obviously Congress has this same right where its intention is plainly revealed in the legislative history of the original bill.

Because we hold that the 1971 amendment constituted a clarification, we need not discuss taxpayer's argument that there was a retroactive application violative of due process.

II.

■ As to taxpayer's equal protection claim, it has been determined in *Wagner v. United States*, 387 F.2d 966, 181 Ct.Cl. 807 (1967) that:

. . . It is inherent in any voluntary system of taxation that there will be those who, knowingly or not, fail to file the required tax returns. The fact that all taxpayers or all areas of the tax law cannot be dealt with by the Internal Rev-

**3.** Senate Report 91–552, 91st Cong., 1st Sess. 115, 1969 U.S.Code Cong. and Admin.News, pp. 2027, 2146 states:

The . . . capital gain preferences . . . which are derived from sources outside the United States will also be subject to the minimum tax if the foreign country either does not tax these items or taxes them at a preferential rate.

enue Service with equal vigor and that there thus may be some taxpayers who avoid paying the tax cannot serve to release all other taxpayers from their obligation. As this court said in *Kehaya v. United States*, 355 F.2d 639, 641, 174 Ct.Cl. 74, 78 (1966): "The Commissioner's failure to assess deficiencies against some taxpayers who owe additional tax does not preclude him from assessing deficiencies against other taxpayers who admittedly owe additional taxes on the same type of income. The Commissioner might reasonably conclude that a reaudit of * * * returns * * * would not produce sufficient additional revenue to justify the undertaking. Such a decision would certainly not be arbitrary."

387 F.2d, at 972. This language is particularly relevant to our circumstances, since taxpayer only alleges that not all ten of the affected shareholders were equally treated under Section 58(g)(2). No claim is made that the Internal Revenue specifically exempted any of the 10 shareholders by a private ruling letter or other means. Also to be considered is the fact presented by the government, that 6 out of the 10 shareholders were assessed with Section 58(g)(2) tax deficiencies.[4]

Taxpayer claims that *International Business Machines Corp. v. United States*, 343 F.2d 914, 170 Ct.Cl. 357 (1965) *cert. denied* 382 U.S. 1028, 86 S.Ct. 647, 15 L.Ed.2d 540 (1966) is controlling concerning the equal protection claim. In *International Business Machines Corp.*, the basis of taxpayer's unequal treatment argument concerned I.R.C. § 7805(b), which permits the Commissioner in his discretion to limit the retroactive effect of rulings and regulations. *Id.*, at 920. Both IBM and Remington had received private ruling letters from the Internal Revenue. The court of claims held that the Internal Revenue had abused its discretion by applying the Code to IBM and its customers differently from Remington and its customers. The court based its finding of

abuse of discretion on the factual occurrences and never implied that such a finding was mandated by constitutional equal protection considerations. *Id.*, at 924.

*International Business Machines Corp.*, has been distinguished by *Bornstein v. United States*, 345 F.2d 558, 170 Ct.Cl. 576 (1965) to a case where the taxpayer has requested a private ruling and has received different treatment from another receiving a private ruling. In the case before us, there was no private ruling concerning the minimum tax.

We conclude that here there was no retroactive application of the minimum tax. Additionally, taxpayer's equal protection claim is not supported by the law.

The judgment is affirmed.

AFFIRMED.

---

4. Ordinarily such evidence would not be before this court in an appeal from a judgment on the pleadings. However, both parties were desirous of discussing such information and both

parties were afforded adequate opportunity to do so. Under Fed.R.Civ.P. 12(b) the trial court could more appropriately have treated the dismissal as a Fed.R.Civ.P. 56 summary judgment.