Willard K. BAKER and Irene L. Baker, Plaintiffs-Appellees,

v.

UNITED STATES of America, Defendant-Appellant.

No. 84–8036.

United States Court of Appeals, Eleventh Circuit.

Dec. 3, 1984.

Rehearing and Rehearing En Banc Denied Feb. 19, 1985.

Glenn L. Archer, Asst. Atty. Gen., Gilbert S. Rothenbergrass, Laurie A. Synder, Tax Div., Dept. of Justice, Washington, D.C., for defendant-appellant.

William E. Frantz, Atlanta, Ga., for plaintiffs-appellees.

Before KRAVITCH and HENDERSON, Circuit Judges, and ALLGOOD *, District Judge.

KRAVITCH, Circuit Judge:

The Internal Revenue Service (IRS) has determined that veterans enrolled in flight-training courses may not deduct from taxable income that portion of their tuition reimbursed by tax-exempt Veterans Benefits. In this case we must decide whether the IRS abused its discretion by applying this ruling to previous tax years. The United States appeals from the district court's determination that the Service should not

* Honorable Clarence W. Allgood, U.S. District Judge for the Northern District of Alabama, sitting by designation.

have disallowed retroactively a deduction for educational expenses taken in 1977 by the appellees, Willard and Irene Baker. We affirm.

## I. BACKGROUND

In 1977, Willard Baker attended flight-training classes in Atlanta, which cost $10,-384. At the time, Baker was employed as a Delta Airlines pilot. The Bakers, on their joint return for 1977, reduced their taxable income by the cost of the class, claiming that amount as a trade or business deduction. 26 U.S.C. § 162(a) (1982). Because Willard Baker had served in the armed forces, the Veterans Administration (VA) in 1977 paid him $9,345 as an educational assistance allowance under former 38 U.S.C. § 1677(b) (repealed 1981). This amount is statutorily exempt from taxation. 38 U.S.C. § 3101(a) (1982). Although Baker was in effect reimbursed for ninety percent of the tuition, he was permitted to deduct the entire amount he expended pursuant to a 1962 revenue ruling, in which the IRS stated that a deduction for educational expenses need not be reduced by the amount of educational benefits paid by the VA. Rev.Rul. 62–213, 1962–2 C.B.50, *revoked by*, Rev.Rul. 83–3, 1983–1 I.R.B.10.

In 1980 the IRS modified its prior ruling and determined that flight-training expenses would not be deductible to the extent that a taxpayer receives tax-exempt educational benefits from the VA under former 38 U.S.C. § 1677(b). Rev.Rul. 80–173, 1980–2 C.B.60. The IRS reasoned that 26 U.S.C. § 162(a) did not permit deduction of an expense for which a taxpayer specifically is reimbursed. With respect to all other VA educational benefits, the Commissioner left his prior ruling intact. The Commissioner distinguished flight-training allowances from payments made for other educational programs, characterizing the former as a tuition reimbursement and the latter as a living stipend consisting of a level payment made without consideration of the costs incurred. Because the Commissioner did not indicate that this new ruling would be prospective only, the decision was presumed to be retroactive under 26 U.S.C. § 7805(b) (1982). Subsequently, the IRS reversed its previously held position as to general educational benefits, ruling that no veteran may deduct amounts expended for educational programs that are allocable to tax-free benefits paid by the VA. Rev. Rul. 83–3, 1983–1 I.R.B.10. This later ruling, however, was limited to prospective application only.

The IRS audited appellees' 1977 return, reduced their deduction by the amount received from the VA, and assessed a deficiency of $4,525. On December 30, 1981, appellees paid this amount. After the Commissioner denied their claim for refund, appellees instituted this suit in district court. On cross-motions for summary judgment,[1] the court ruled that plaintiffs were entitled to the refund because the IRS had abused its discretion by retroactively denying a deduction to taxpayers who received educational benefits for flight-training courses while not disallowing the same deduction for those whose entitlement to benefits accrued by reason of their enrollment in other forms of education. *Baker v. United States*, 575 F.Supp. 508 (N.D.Ga.1983). The United States now brings this appeal.[2]

---

**1.** In its answer, the government denied that the flight-training course improved taxpayer's skills, a prerequisite to permitting deduction of an expense under 26 U.S.C. § 162(a). For purposes of the court's rulings on the motions, this point was conceded. Thus, the motions were for partial summary judgment only. Subsequent to the court's ruling, the government amended its answer and admitted that the course did improve taxpayer's skills.

**2.** In the court below, the Bakers challenged the Commissioner's determination that VA payments were a direct reimbursement of the edu-

cational expenses, and argued that the Commissioner should not be permitted to apply a changed interpretation of law retroactively to a year in which they detrimentally relied upon published guidelines. Finding these contentions to be without merit, the district court did not discuss these issues. The Bakers do not now question the Commissioner's theory for disallowing the deduction, and admit that changed interpretations of the law may be applied retroactively. Therefore, the substance of the Commissioner's holding in Revenue Ruling 80–173 is not before us.

## II. DISCUSSION

■ The government argues that Congress has expressly permitted the IRS to apply its decisions retroactively. Section 7805(b) of the Internal Revenue Code provides that the "Secretary may prescribe the extent, if any, to which any ruling or regulation, relating to the Internal Revenue laws, shall be applied with retroactive effect." 26 U.S.C. § 7805(b) (1982). Unless otherwise indicated, IRS rulings and regulations therefore are presumed to be retroactive. *See Anderson, Clayton & Co. v. United States,* 562 F.2d 972, 979 (5th Cir. 1977), *cert. denied,* 436 U.S. 944, 98 S.Ct. 2845, 56 L.Ed.2d 785 (1978).[3] Failure to limit rulings to prospective application, however, is reviewable for an abuse of discretion. *See Dixon v. United States,* 381 U.S. 68, 71–75, 85 S.Ct. 1301, 1303–05, 14 L.Ed.2d 223 (1965); *Wendland v. Commissioner,* 739 F.2d 580, 581 (11th Cir. 1984). Thus, although retroactivity is presumptively permissible, in each case the reviewing court must determine whether under all the circumstances, retroactive application is warranted. *Chock Full O'Nuts Corp. v. United States,* 453 F.2d 300, 302–03 (2d Cir.1971).

In *Anderson, Clayton,* the former Fifth Circuit delineated certain relevant factors for a court to consider when reviewing the Commissioner's decision to apply a ruling retroactively.

(1) [W]hether or to what extent the taxpayer justifiably relied on settled prior law or policy and whether or to what extent the putatively retroactive regulation alters that law; (2) the extent, if any, to which the prior law or policy has been implicitly approved by Congress, as by legislative reenactment of the pertinent Code provisions; (3) whether retroactivity would advance or frustrate the interest in equality of treatment among similarly situated taxpayers; and (4) whether according retroactive effect would produce an inordinately harsh result.

562 F.2d at 981. Appellees' arguments focus on the third factor, the equality of treatment among similarly situated taxpayers. As Justice Frankfurter observed:

The Commissioner cannot tax one and not tax another without some rational basis for the difference. And so, assuming the correctness of the principle of "equality," it can be an independent ground of the decision that the Commissioner has been inconsistent, without much concern for whether we should hold as an original matter that the position the Commissioner now seeks to sustain is wrong.

*United States v. Kaiser,* 363 U.S. 299, 308, 80 S.Ct. 1204, 1210, 4 L.Ed.2d 1233 (1960) (concurring opinion).

Although this principle has not often been invoked to overturn the Commissioner's decision to create a retroactive ruling, courts have held that retroactive decisions that result in inequality of treatment unexplained by any rational basis can indeed constitute an abuse of discretion. For example, in *Exchange Parts Co. v. United States,* 150 Ct.Cl. 538, 279 F.2d 251 (1960), the court held that the Commissioner's decision to apply a ruling retroactively for some taxpayers and prospectively for others was impermissible. *Exchange Parts* arose when plaintiff sought to recover a manufacturers' excise tax that it had paid for many years upon the sale of its products. In its request for a refund, plaintiff relied on two letter rulings and two revenue rulings in which the IRS held that plaintiff's products were exempt from the tax. After plaintiff filed for a refund, the IRS reversed its position on the issue. In revoking its previous rulings, the IRS stated that it would not seek to recover unpaid taxes for parts already sold. It would not, however, refund taxes that had been paid. The court held the Commissioner's distinction, based solely upon whether the tax was collected, to be discriminatory and ordered a refund. *Id.* at 254. Other courts, when faced with similar

---

**3.** The Eleventh Circuit, in the en banc decision *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

arbitrary distinctions, have forbidden the IRS to apply rulings retroactively. *See Farmers' and Merchants' Bank v. United States,* 476 F.2d 406 (4th Cir.1973); *Connecticut Railway and Lighting Co. v. United States,* 135 Ct.Cl. 650, 142 F.Supp. 907 (1956).

■ The government contends that the difference in the methods used to compute the benefits for flight-training courses and other forms of education provides a rational basis for differential tax treatment of the two. Former 38 U.S.C. § 1677(b), entitled a veteran enrolled in a flight-training program to receive ninety percent of the tuition as an educational benefit. On the other hand, under 38 U.S.C. § 1682(a)(1) (1982), general educational benefits are computed based upon the number of the veteran's dependents and the degree of participation in a course. Thus, the government argues, the former is a direct reimbursement of money expended; the latter is a living stipend awarded without consideration of the amount of educational expenses incurred.[4] Indeed, in *Manocchio v. Commissioner,* 710 F.2d 1400 (9th Cir. 1983), a case factually indistinguishable from the one at bar, the Ninth Circuit employed this very distinction when it approved the retroactive application of the revenue ruling before us. 710 F.2d at 1404.[5] We disagree with the *Manocchio* court's conclusion that the distinct methods of determining benefits justify the disparate treatment of taxpayers.

An analysis of the applicable statutory scheme assists us in the resolution of this case, and reveals that Congress created but one educational assistance allowance, the recipients of which should be afforded similar treatment for tax purposes. Congress's purpose in enacting the system of VA payments to veterans enrolled in educational programs was to encourage individuals to enlist in the armed services and to aid veterans who interrupt a vocational or educational pursuit to serve their country. 38 U.S.C. § 1651 (1982). 38 U.S.C. § 1681(a) (1982) entitles veterans attending educational programs to receive an "educational assistance allowance," which is intended to provide for the veterans' subsistence while pursuing the program and to compensate partially tuition, books, and other associated costs. This section creates an entitlement to this allowance for veterans enrolled in *any* program of education that meets the eligibility requirements. It is indeed true that the method of computing benefits, however, varies, depending upon the type of program in which the veteran is enrolled. Former 38 U.S.C. § 1677(b) provides that veterans who receive flight training may obtain an allowance equal to ninety percent of the cost of the course. Educational benefits awarded under section 1682(a)(1) to veterans in other programs, however, consist of a monthly payment dependent upon the number of the veteran's dependents, and the degree of participation in an educational program.[6] In setting

---

**4.** Congress repealed 38 U.S.C. § 1677 in 1981. Pub.L. 97–35, 95 Stat. 782. The VA no longer has the authority to award benefits for enrollment in a flight-training course unless the course is offered by a college or university for credit toward a degree the veteran is seeking. 38 U.S.C. § 1673(b) (1982).

**5.** At least two other circuits have upheld the retroactive application of Revenue Ruling 80–173. *Rivers v. Commissioner,* 727 F.2d 1103 (4th Cir.1984); *Olszenski v. Commissioner,* No. 83–1346, slip op. (1st Cir. Dec. 8, 1983). It is not clear whether the taxpayers in those cases raised the same arguments presented here.

**6.** There are actually several different methods of calculating the educational assistance allowance, depending on the type of program in which the veteran is enrolled. For example, 38 U.S.C. § 1682(b) (1982) provides that veterans

enrolled in educational programs on a less than half-time basis shall receive the lesser of tuition and fees, or $342 per month. Any veteran enrolled in courses prior to discharge is compensated similarly. *Id.* Eligible veterans pursuing education through correspondence courses are entitled to receive fifty-five percent of the cost of the course. 38 U.S.C. § 1786 (1982). The government contends that the rationale of Revenue Ruling 80–173 would be applied to deductions taken for costs associated with these programs. Considering that Revenue Ruling 80–173 is explicitly limited to flight-training benefits, and Revenue Ruling 83–3 seemingly covers educational allowances for all other programs, we believe that the Commissioner's failure to define a consistent position supports our holding in this case.

forth these methods of computation, Congress refers to the benefit using identical language: educational assistance allowance. That Congress instructed the VA to calculate benefits for veterans enrolled in flight-training courses as a percentage of tuition, while paying those enrolled in other programs without consideration of the costs incurred, does not require us to overlook the fact that the non-taxable benefit is tied directly to the veteran's participation in the program. The nature of the benefit therefore remains the same. As the court below noted, the distinction created by Revenue Ruling 80–173 "between the *nature* of the benefit received by veterans in flight training programs and all other veterans is not borne out by the language of the statute...." 575 F.Supp. at 511 (emphasis in original).

By adopting Revenue Ruling 83–3, which holds that no veteran may deduct from taxable income educational expenses allocable to VA benefits [7], the IRS has apparently recognized that all veterans who receive educational benefits should be taxed similarly. This ruling, however, will not be applied retroactively to assess deficiencies for taxpayers who deducted these expenses in prior tax years.[8] Nonetheless, the government argues that it has not drawn an arbitrary distinction because a veteran who receives flight-training allowances must use the entire amount for educational purposes, whereas veterans engaged in other educational pursuits are merely "expected" to use a portion of the benefits for tuition, books, and other costs. Such a distinction is not evident in the statutory scheme: section 1681(a) provides that the allowance is intended to compensate both educational costs and provide for the veteran's support during the period of enrollment. Moreover, we are not persuaded that this distinction permits retroactive denial of a deduction for some veterans receiving certain educational benefits, while allowing others who received similar educational benefits to retain the advantage of the deduction. This argument ignores the underlying reality: all veterans enrolled in educational programs received tax-free benefits intended to compensate some portion of educational expenses.[9]

The government cites *Dixon v. United States*, 381 U.S. 68, 85 S.Ct. 1301, 14 L.Ed.2d 223 (1965), for the proposition that so long as the Commissioner harbors a good-faith belief that a difference in tax treatment is justified, he has not abused his discretion. We decline to read that case so broadly. *Dixon* arose when the IRS

---

7. In Revenue Ruling 83–3, the IRS, relying on Congressional intent that one-half of VA educational benefits should compensate tuition and other costs and the other half should provide a living stipend, ruled that only one-half of general educational benefits is allocable to the costs of the education. Our holding today in no way casts aspersion on the Commissioner's decision to divide the benefits in this manner, assuming it is an accurate statement of Congressional intent.

8. The Ninth Circuit observed that the fairness of Revenue Ruling 80–173 was buttressed by Revenue Ruling 83–3. *Manocchio,* 710 F.2d at 1404 n. 3. The court did not mention that this ruling was nonretroactive.

9. We acknowledge that equal treatment of taxpayers, although a worthy goal, is an inherently difficult task given the vast and complex administrative responsibilities imposed on the Commissioner. *See Sirbo Holdings, Inc. v. Commissioner,* 509 F.2d 1220, 1222 (2d Cir. 1975); Davis, Administrative Law Treatise § 8:12 (1979). Recognizing these difficulties, courts have placed limits on the equality principle. For example, taxpayers who have not requested or received private letter rulings from the IRS will not succeed on a claim of discriminatory treatment because other taxpayers have received private letter rulings on the tax consequences of the same activities. *See, e.g., Knetsch v. United States,* 172 Ct.Cl. 378, 348 F.2d 932, 940 (1965). In addition, the Service need not simultaneously pursue all taxpayers who make the same deductions when assessing a deficiency. *See Austin v. United States,* 611 F.2d 117, 120 (5th Cir.1980). We do not believe that this case, however, presents a problem of unequal treatment attributable to administrative difficulties. The IRS, in Revenue Ruling 80–173, specifically distinguishes between veterans who receive flight-training allowances and those who obtain other educational benefits. Moreover, in Revenue Ruling 83–3, the Commissioner, in deciding to no longer permit any veteran to deduct educational expenses allocable to VA benefits, expressly provided that this ruling would be prospective. In our view, the explanation offered for the differential tax treatment falls short of the rational basis requirement.

announced that it would follow a Tax Court decision allowing capital gains treatment for the amount realized upon retirement of a particular type of debt security. The Commissioner subsequently revoked this acquiescence, and determined that the new position would be applied retroactively. An exception was created to the retroactivity portion of the ruling in that no deficiency would be assessed for amounts received upon redemption of those instruments purchased between the dates of the two rulings. Petitioners sought favorable capital gains treatment for other types of securities they purchased during that same period. The Court observed that petitioners failed to discharge their burden of demonstrating that the two securities could not be rationally distinguished. 381 U.S. at 80, 85 S.Ct. at 1307–08. The Court then hypothesized reasons for the Commissioner's decision to create an exception to their retroactive ruling concluding that, "It is not for us to pass on the wisdom of any such distinction." *Id.* 85 S.Ct. at 1308. "It suffices that *on this record* we cannot say that the distinction was so devoid of a rational basis that we must now overturn the Commissioner's judgment." *Id.* (emphasis added). Thus, the *Dixon* Court properly refused to overturn an exercise of discretion when petitioners failed to sustain their burden of establishing why the discretion was abused. Unlike the petitioners in *Dixon,* plaintiffs here have demonstrated the irrationality of the Commissioner's action.

## III. CONCLUSION

We conclude that retroactive enforcement of Revenue Ruling 80–173 creates an arbitrary distinction devoid of any rational basis. We hold, therefore, that the Commissioner abused the discretion afforded under 26 U.S.C. § 7805(b). The district court's ruling is AFFIRMED.