MATSON NAVIGATION COMPANY, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

ALEXANDER AND BALDWIN, INC., PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 1625–74—1626–74.   Filed September 1, 1977.

*Hart H. Spiegel* and *Robert C. Livsey,* for the petitioners.
*Vernon R. Balmes* and *Arturo Estrada,* for the respondent.

SUPPLEMENTAL OPINION

SIMPSON, *Judge:* The petitioners[1] timely filed a motion for reconsideration of the Court's opinion in this case, filed March 16, 1977 (67 T.C. 938). In such motion, Matson asks us to reconsider our conclusion that Rev. Proc. 68–27, 1968–2 C.B. 911, should be given retroactive effect in this case. Alternatively, Matson argues that if any adjustment in the class life of its vessel account is required, such adjustment should be made under section 4.02(b) (which provides for a 5-percent adjustment), rather than under section 4.02(a) (providing for a 10-percent adjustment), of Part II of Rev.

---

[1] Alexander & Baldwin, Inc., is a party to this proceeding only by virtue of having filed consolidated returns with Matson Navigation Co. (Matson), and Matson will be referred to as the petitioner.

Proc. 65–13, 1965–1 C.B. 759, 768. A hearing was held on the motion, and the parties have filed briefs in support of their positions.

In our original opinion in this case, we stated that:

Although the petitioner vigorously argues that retroactive application of Rev. Proc. 68–27 is inequitable, it cites no legal authority in support of this argument * * * [67 T.C. at 950.]

We concluded that retroactive application of Rev. Proc. 68–27 was required and so applied it. In its motion for reconsideration, Matson has advanced new arguments not previously considered by the Court and has convinced us that our prior conclusion on this issue should be modified. For the reasons set forth below, we are now of the opinion that Rev. Proc. 68–27 was not intended to apply retroactively and should not be so applied.

In 1962, the Internal Revenue Service issued Rev. Proc. 62–21, 1962–2 C.B. 418;[2] the purpose of such revenue procedure was "to provide taxpayers with a greater degree of certainty in determining the amount of their depreciation deductions and to provide greater uniformity in the audit of these deductions by the Internal Revenue Service." Rev. Proc. 62–21 at 429. Part II of such revenue procedure announced the detailed procedures to be used in examining a taxpayer's depreciation deductions on audit; such part also stated "adjustments in the depreciation deduction should not be proposed unless there is a clear and convincing basis for a change. The procedures set forth herein are to be followed in determining whether there is a clear and convincing basis for a change." Rev. Proc. 62–21 at 429 (fn. ref. omitted.)

Section 3.05 of Part II, Rev. Proc. 62–21 at 433, at issue here, provided in relevant part:

.05 *Subsequent use of class life previously justified.*—Where the class life used by a taxpayer * * * was accepted on audit by the Internal Revenue Service under presently established procedures for examining depreciation (whether before or after the effective date of this Revenue Procedure), the depreciation deduction claimed by the taxpayer for the assets in that class in any subsequent taxable year based on that class life will not be disturbed if the taxpayer's retirement and replacement practices for that class are

---

[2] All references to Rev. Procs. 62–21, 65–13, and 68–27 are to the pages in the Cumulative Bulletins where such revenue procedures are published.

consistent with the class life being used. This consistency may be demonstrated either by the reserve ratio test set forth in section 5 of this Part or by all the facts and circumstances.

The reserve ratio test is a technique for establishing objectively that the taxpayer's retirement and replacement practices for a guideline class are consistent with the class life he is using. If the test is met, the depreciation deduction for that class will not be disturbed. * * *

It is undisputed that Matson justified a class life of 13.11 years for its vessel account after an extended audit of its 1964 return. It is also undisputed that for each of the taxable years 1965 through 1969, Matson met the guideline form of the reserve ratio test (outlined in Rev. Proc. 65–13), thus demonstrating that its retirement and replacement practices were consistent with a class life of 13.11 years. However, the Commissioner argued that Matson was not entitled to rely on section 3.05, Part II, Rev. Proc. 62–21, because of his subsequent Rev. Proc. 68–27 at 911–912, which provided in relevant part:

Section 1. Purpose.

The purpose of this Revenue Procedure is to prescribe the procedures applicable under section 3.05, Part II, of Revenue Procedure 62–21, C.B. 1962–2, 418, in those cases in which there are additions, retirements, or replacements of assets to an account that had previously justified a shorter than guideline class life.
    * * *
Sec. 3. Application.

Section 3.05, Part II, of Revenue Procedure 62–21 is not to be applied without regard to the underlying facts. The applicability of this section is dependent upon the relative proportions of the different types of assets in the account at the time a shorter than guideline life was justified which proportions were not being substantially altered by subsequent additions, retirements, or replacements. Whether subsequent additions, retirements, or replacements substantially alter the relative proportions of the different types of assets in an account is a question of fact. The principle involved in such determination is enunciated in *Example* 2 of section 1.167(b)–1(b) of the Income Tax Regulations in which the composite depreciation rates of composite accounts remain unchanged as long as subsequent additions, retirements, or replacements do not substantially alter the relative proportions of different types of assets in the accounts.

Sec. 4. Conclusion.

In situations in which the relative proportions of the different types of assets in an account are in fact substantially altered by subsequent additions, retirements, or replacements to the account, a previously justified

shorter than guideline class life holds no significance and section 3.05, Part II, of Revenue Procedure 62–21 is not applicable.

The Commissioner asserted that in the years following 1964, there was a substantial alteration of the assets in Matson's vessel account. He contends that Rev. Proc. 68–27 should be applied retroactively, and in support of that position, he argues that a taxpayer should have read section 3.05, Part II, Rev. Proc. 62–21 together with section 1.167(b)–1(b) of the Income Tax Regulations, and recognized that a previously justified class life could no longer be used if there was a substantial alteration of the assets in the account. In other words, he asserts that Rev. Proc. 68–27 was merely a restatement and clarification of the applicable rules.

We disagree with the Commissioner's position. Pursuant to the example in the regulations, the rate of depreciation of a composite account is computed by determining the amount of 1 year's depreciation for each asset in the account and by dividing the total depreciation so obtained for 1 year by the total cost or other basis of the assets:

| Cost or other basis | Estimated useful life | Annual depreciation |
|---|---|---|
| | Year | |
| $10,000 | 5 | $2,000 |
| 10,000 | 15 | 667 |
| 20,000 | | 2,667 |

Average rate is 13.33 percent ($2,667 ÷ $20,000) unadjusted for salvage. * * * [Sec. 1.167(b)–1(b), example 2, Income Tax Regs.]

If additions, retirements, or replacements alter the asset mix, the composite rate previously determined may no longer be appropriate; however, the regulations require a change in the composite rate only when the account has been "substantially" altered. Sec. 1.167(b)–1(b), Income Tax Regs.

Before Rev. Proc. 62–21, whether the asset mix in a composite account had been changed could be determined by taxpayers and the IRS only from an examination of all the underlying facts and circumstances—an item-by-item examination. Moreover, what constituted so "substantial" an alteration as to require a change in rate of depreciation was a question on which the taxpayer and the IRS could have disparate views. Rev. Proc. 62–21 appeared to provide an

alternative for such potential controversies; it provided that the reserve ratio test could be used as an objective means for determining whether there had been such a substantial alteration in the asset mix of the account as to require a change in the class life used for depreciation purposes. If a taxpayer substantially alters the composition of the account and continues to base its depreciation deductions upon a previously justified class life, the reserve ratio test, in time, will not be met, and an adjustment will be required. Rev. Proc. 68–27 may accelerate the time for an adjustment of the class life; it also, in effect, repeals the reserve ratio test as a measure of the appropriateness of the continued use of a previously justified class life and removes the certainty in the audit of depreciation deductions which Rev. Proc. 62–21 sought to establish. In short, Rev. Proc. 68–27 seems to us a departure from the philosophy and intent of Rev. Proc. 62–21, and we reject the Commissioner's present attempt to characterize it as a restatement of principle obviously implicit in Rev. Proc. 62–21.

Having determined the effect of Rev. Proc. 68–27, we must determine whether this departure from previous practice was intended to be given retroactive effect, or whether it was intended to be applied prospectively only. Nothing in the revenue procedure itself indicates whether it was to be applied retroactively or prospectively; it merely states that it is an "amplification" of the prior procedure. The Commissioner's position is that under section 7805(b), I.R.C. 1954,[3] any statement of position (including revenue procedures) is retroactive in effect, unless he affirmatively exercises his discretion to make it prospective only.

Section 7805(b) provides:

(b) RETROACTIVITY OF REGULATIONS OR RULINGS.—The Secretary, or his Delegate, may prescribe the extent, if any, to which any ruling or regulation, relating to the internal revenue laws, shall be applied without retroactive effect.

The statute assumed substantially its present form in section 506 of the Revenue Act of 1934 (48 Stat. 680, 757). The

---

[3] All statutory references are to the Internal Revenue Code of 1954 as in effect during the years in issue.

legislative history of the provision offers the following explanation of its purpose:

> The amendment * * * permits internal revenue rulings as well as regulations or Treasury decisions to be applied without retroactive effect. Regulations, Treasury decisions, *and rulings which are merely interpretive of the statute, will normally have a universal application,* but in some cases the application of regulations, Treasury decisions, and rulings to past transactions which have been closed by taxpayers in reliance upon existing practice, will work such inequitable results that it is believed desirable to lodge in the Treasury Department the power to avoid these results by applying certain regulations, Treasury decisions, and rulings with prospective effect only. [H. Rept. 704, 73d Cong., 2d Sess. (1934), 1939–1 C.B. (Part 2) 554, 583; emphasis supplied.]

See also S. Rept. 558, 73d Cong., 2d Sess. (1934), 1939–1 C.B. (Part 2) 586, 623. Cases arising under section 7805(b) have stated that the Commissioner is empowered retroactively to correct mistakes of law, this principle being a reflection of the fact that "Congress, not the Commissioner, prescribes the tax laws." *Dixon v. United States,* 381 U.S. 68, 73 (1965); see also *Automobile Club of Michigan v. Commissioner,* 353 U.S. 180, 183 (1957); *Wolinsky v. United States,* 271 F.2d 865, 868 (2d Cir. 1959); *Exchange Parts Co. of Fort Worth v. United States,* 279 F.2d 251, 254 (Ct. Cl. 1960); *City Loan and Savings Co. v. United States,* 177 F.Supp. 843, 851 (N.D. Ohio 1959). We agree with the Commissioner that pursuant to section 7805(b) revenue rulings, which interpret statutory provisions, are generally retroactive, and that affirmative action on his part is required to make such rulings nonretroactive.

Yet, there remains a question as to whether revenue procedures are to be treated in the same manner as revenue rulings which merely interpret the statute. In his own announcements, the Commissioner has traditionally treated them differently. In Rev. Proc. 55–1, 1955–2 C.B. 897, the IRS announced a new policy of publishing as revenue procedures all statements of practice and procedure appearing in internal management documents which affect rights or duties of taxpayers under the Internal Revenue Code. Rev. Proc. 55–1 specifically provided that "The policy set forth herein *shall not apply to (a) interpretations of substantive tax law* publishable as Revenue Rulings." (Emphasis supplied.)

Despite the distinction between revenue rulings and revenue procedures, until the latter half of 1967, the Commis-

sioner's published position with respect to both rulings and procedures was that they were applicable retroactively unless they specifically indicated otherwise. At that time, the introduction to the Internal Revenue Bulletins provided:

> It is the policy of the Service to publish in the Bulletin all substantive and procedural rulings of importance or of general interest, the publication of which is considered necessary to promote a uniform application of the tax laws. It is also the policy to publish all rulings and statements of procedures which supersede, revoke, modify, or amend any published ruling or procedure. *Except where otherwise indicated, published rulings and procedures apply retroactively.* Rulings and statements of procedures relating solely to matters of internal management are not published. However, statements of internal practices and procedures affecting rights or duties of taxpayers, or industry regulation, which appear in internal management documents, are published. [1967–1 C.B. XV; emphasis supplied.]

In the latter half of 1967, such statement was amended to read as follows:

> It is the policy of the Service to publish in the Bulletin *all substantive rulings* necessary to promote a uniform application of the tax laws, including all rulings that supersede, revoke, modify, or amend any of those previously published in the Bulletin. *All published rulings apply retroactively unless otherwise indicated.* Procedures relating solely to matters of internal management are not published; however, industry regulations appearing in internal management documents and statements of internal practices and procedures that affect the rights and duties of taxpayers are published. [1967–2 C.B. LIII; emphasis supplied.]

Thus, the admonition regarding retroactivity of procedures was omitted. The statement provides only that "statements of * * * procedures that affect the rights and duties of taxpayers are published."

Since that change, the Commissioner has reiterated the distinction between revenue rulings and revenue procedures. Rev. Proc. 68–44, 1968–2 C.B. 954, which restates the objectives of the revenue rulings and revenue procedures programs, provides that "Rulings * * * involving substantive tax law * * * are published in the form of Revenue Rulings." Rev. Proc. 68–44 at 955. The revenue procedure also provides with respect to revenue rulings, that such rulings apply retroactively unless the revenue ruling itself includes a specific statement that the authority of section 7805(b) has been invoked to provide for prospective application only. Rev. Proc. 68–44 at 956. It further provides that such authority

ordinarily is invoked to provide that new rulings will not be applied retroactively to the extent that they have adverse effects on taxpayers. With respect to revenue procedures, Rev. Proc. 68–44 provides at 956–957:

Statements of procedures which affect the rights or duties of taxpayers or other members of the public under the Code and related statutes will be published in the Bulletin in the form of Revenue Procedures. Revenue Procedures usually reflect the contents of internal management documents, but, where appropriate, they are also published to announce practices and procedures for guidance of the public. * * *

See also Rev. Proc. 72–1, 1972–1 C.B. 693. Again, with respect to revenue procedures, as distinct from revenue rulings, there is no admonition with respect to retroactivity. In line with the announced distinction between revenue rulings and revenue procedures, the IRS, when it has included a specific provision in a revenue procedure as to its applicability, has generally made revenue procedures applicable prospectively only. See, e.g., Rev. Proc. 77–8, 1977–10 I.R.B. 12 (modification of asset guideline classes for certain assets under the Class Life ADR system); Rev. Proc. 75–50, 1975–2 C.B. 587 (guidelines and recordkeeping requirements for determining whether private schools have racially nondiscriminatory policies); Rev. Proc. 75–21, 1975–1 C.B. 715 (guidelines for issuance of advance rulings in leverage-lease transactions); Rev. Proc. 74–37, 1974–2 C.B. 491 (modification of annual repair percentage and description of assets in guideline class under Class Life ADR system); Rev. Proc. 72–39, 1972–2 C.B. 818 (extent to which contributors may rely on the list of organizations in Publication No. 78 for purposes of deducting contributions under section 170, and procedures under which such reliance may be suspended).

Since Rev. Proc. 68–27 contained no specific effective date, we have sought to make an objective determination of the intended effective date by examining all the surrounding circumstances, and we are convinced that those circumstances would lead a reasonable man to conclude that the revenue procedure was intended to be applied prospectively only. Rev. Proc. 62–21 was issued to acquaint the public with the procedures that would be followed by the IRS in auditing claims for depreciation. It was declared that such audit practices were being made available to the public in order to

bring about greater uniformity in auditing such claims, and the public was encouraged to follow such procedures in computing their claims for depreciation. The public was told that if their claims for depreciation were prepared in accordance with such practices, the claims would not be adjusted by IRS. The petitioner in this case asserts that it continued its program of modernizing its vessels in reliance upon the belief that it was entitled to claim depreciation in accordance with the procedures set forth in Rev. Proc. 62–21. It asserts that it believed its claimed depreciation was allowable either in the manner set forth on its returns or by reliance upon the class life previously determined. It was surely reasonable for taxpayers such as Matson to believe that they could rely upon Rev. Proc. 62–21 and to conclude that the Commissioner would not subsequently take any action which would undermine their reliance upon such procedures. Such circumstances would lead a reasonable person to believe that Rev. Proc. 68–27 was not intended to be applied retroactively, since it does in fact alter those procedures.

Moreover, the change in the Commissioner's statement describing revenue procedures and revenue rulings in 1967 and subsequent years appears to indicate that he recognized that revenue procedures are generally not to be made retroactive. In addition, to make Rev. Proc. 68–27 applicable retroactively would be contrary to his announced policy of not making rulings applicable retroactively when to do so would adversely affect taxpayers who had relied upon the earlier rulings. Finally, it appears that whenever he has specifically considered the question of whether a revenue procedure is to be applicable retroactively or prospectively, he has provided that it is to be applicable prospectively only. For these reasons, we are convinced that these actions by the Commissioner indicate that he intended for Rev. Proc. 68–27 to be applicable prospectively only.

Accordingly, for the years 1965, 1966, and 1967, Matson may base its depreciation deductions upon a class life of 13.11 years, provided it continued to meet either the tabular form or the guideline form of the reserve ratio test during such years. However, for the taxable years 1968 and 1969, Rev. Proc. 68–27 is applicable. Thus, in order to demonstrate that it is entitled for 1968 and 1969 to continue to base its

depreciation deductions on its previously justified class life of 13.11 years, Matson must show, on the basis of all of the facts and circumstances, that the composition of its vessel account has not been substantially altered since December 31, 1964.

The possibility of an adjustment for 1968 and 1969 raises the question of how much of an adjustment is required under the minimal adjustment rule of Rev. Proc. 65–13. The minimal adjustment rule prescribes procedures to be followed in lengthening a class life which cannot be justified and provides generally that "class lives will not be lengthened by more than 10 percent in any taxable year." Rev. Proc. 65–13 at 768. Such rule further provides for a 5-percent adjustment where the actual reserve ratio exceeds the transitional upper limit by less than 10 percentage points. Matson originally argued that even if the class life used by it was not justified, no adjustment could be made, since its actual reserve ratio never exceeded the transitional upper limit. In our earlier opinion, we rejected such argument and suggested that a 10-percent adjustment was required.

Matson now concedes that if it cannot justify continued use of a class life of 13.11 years, some adjustment is required. However, it argues that an adjustment of 5 percent, rather than 10 percent, is appropriate. Pointing out that its actual reserve ratio never exceeded the transitional upper limit, Matson argues that an excess of zero is less than 10 percentage points, and therefore, the 5-percent rule is applicable. The Commissioner has come forth with no argument to support a 10-percent adjustment. Upon reconsideration, we agree with Matson that it comes within the literal language of the 5-percent rule. Furthermore, we can perceive no policy or other reasons which would require a 10-percent adjustment. Accordingly, if Matson cannot justify use of a class life of 13.11 years for 1968, it may base its depreciation deduction for that year on a class life of 13.7655, that is, 13.11 plus 5 percent thereof, or 0.6555.[4] However, the class life may not be lengthened beyond the shortest life which can be justified for the guideline class under all the facts and circumstances. Rev. Proc. 65–13 at 768. The class life so

---

[4] At the hearing on this motion, the parties stipulated as to how the adjustment should be computed, should an adjustment be required.

adjusted may also be used for the taxable year 1969. See sec. 4.03, Part II, Rev. Proc. 65–13 at 768–769.

In view of the conclusion we have reached herein, it is unnecessary to consider Matson's argument that retroactive application of Rev. Proc. 68–27 constitutes an abuse of discretion under section 7805(b). For the same reason, Matson's motion to compel production of documents will be denied.

*An appropriate order will be issued.*