GUY G. TROPEANO AND GLORIA TROPEANO, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 11060–79.    Filed November 19, 1981.

*John Henderson Linsley*, for the petitioners.
*Gary S. Gross*, for the respondent.

### OPINION

FAY, *Judge*: Respondent determined a deficiency of $8,598 in petitioners' Federal income tax for 1976. The issue is whether certain foreign-source capital gain recognized by petitioners is subject to the minimum tax imposed by section 56.[1]

All the facts have been stipulated and are found accordingly.

Petitioners Guy G. Tropeano and Gloria Tropeano resided in Weston, Mass., when they filed their petition in this case.

In 1976, Guy G. Tropeano (petitioner), was a general partner of North Atlantic Associates (NAA), a limited partnership. During 1976, NAA recognized capital gain from the sale of certain business property located in the Republic of Ireland. Petitioners' distributive share of such capital gain was $134,640. The gain recognized by NAA qualified as capital gain under the tax laws of the Republic of Ireland and was taxed by Ireland at a flat rate of 26 percent. In 1976, the rate

---

[1]Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954 as amended and in effect during the taxable year in issue.

of tax imposed on individuals by the Republic of Ireland on ordinary income ranged from 26 percent to 77 percent. Had the gain herein been taxed at ordinary rates rather than at the flat 26-percent rate for capital gains, the tax imposed by the Republic of Ireland would have been substantially higher.

Petitioners' distributive share of $134,640 in foreign-source capital gain was the only capital transaction reported by petitioners in 1976. For the taxable year 1976, petitioners did not treat one-half of their net capital gain, $67,320, as an item of tax preference subject to the minimum tax. In his notice of deficiency, respondent determined that one-half of such net capital gain is an item of tax preference subject to the minimum tax.

Section 56(a) imposes a minimum tax equal to 15 percent of the amount by which the sum of the items of tax preference exceeds the greater of $10,000 or the regular tax deduction for the taxable year (as determined under subsection (c)). Section 57(a)(9)(A) provides that in the case of individuals, an amount equal to one-half of a taxpayer's net capital gain for the taxable year is an item of tax preference.

When foreign-source capital gain is involved, reference must be made to section 58(g)(2) which provides in part:

> (2) CAPITAL GAINS AND STOCK OPTIONS.—For purposes of section 56, the items of tax preference set forth in paragraphs (6) and (9) of section 57(a) which are attributable to sources within any foreign country or possession of the United States shall not be taken into account if, under the tax laws of such country or possession—
>
> * * * * * * *
>
> (B) in the case of an item set forth in paragraph (9) of section 57(a), preferential treatment is not accorded gain from the sale or exchange of capital assets (or property treated as capital assets).
>
> For purposes of this paragraph, preferential treatment is accorded such items which are attributable to a foreign country or possession of the United States if such country or possession imposes no significant amount of tax with respect to such items.

Thus, foreign-source capital gain does not give rise to an item of tax preference unless it is accorded "preferential treatment" by the foreign country.

The sole issue in this case is whether the capital gain recognized by petitioners was accorded "preferential treatment" by the Republic of Ireland within the meaning of section 58(g)(2)(B). If the gain was accorded such "preferential treatment," the items of tax preference attributable to such

gain shall be taken into account for purposes of imposing the minimum tax. Sec. 58(g)(2).

The last sentence of section 58(g)(2) provides that "preferential treatment" is accorded such gain if the foreign country imposes "no significant amount of tax" with respect to such gain. According to petitioners, that last sentence, which was added by a 1971 amendment, is the exclusive standard for determining "preferential treatment." Since the Republic of Ireland taxed petitioners' gain at the rate of 26 percent, they conclude that the foreign country imposed a significant amount of tax, and therefore, no "preferential treatment" within the meaning of section 58(g)(2)(B) was accorded such gain. Respondent, on the other hand, argues that one-half of petitioners' net capital gain is an item of tax preference subject to the minimum tax regardless of the fact that the Republic of Ireland imposed a significant amount of tax. Respondent contends that taxation by the foreign country at lower than normal rates constitutes "preferential treatment" under section 58(g)(2)(B). Since the Republic of Ireland taxed petitioners' capital gain at a lower rate, respondent concludes such gain is subject to the minimum tax notwithstanding the fact that a significant amount of foreign tax was imposed. We agree with respondent.

Section 58(g)(2) was first added to the Internal Revenue Code of 1954 in 1969. Sec. 301(a), Tax Reform Act of 1969, Pub. L. 91–172, 83 Stat. 580. Under that section, as originally enacted, the test for determining whether a foreign-source capital gain was subject to the minimum tax was whether such gain was accorded preferential treatment by the tax laws of the foreign country. S. Rept. 91–552 (1969), 1969–3 C.B. 423, 497, explained the congressional intent that such gains "will also be subject to minimum tax if the foreign country either does not tax these items or taxes them at a preferential rate."

In 1971, Congress amended section 58(g)(2) by adding the sentence which provides that "preferential treatment" is accorded foreign-source capital gain if such country imposes "no significant amount of tax" with respect to such items. Sec. 308, Revenue Act of 1971, Pub. L. 92–178, 85 Stat. 524. The dispute in this case turns on the effect of that amendment (hereinafter 1971 amendment).

Petitioners rely on the 1971 amendment for the proposition

that the sole and exclusive standard for determining "preferential treatment" under section 58(g)(2)(B) is whether the foreign country imposes "no significant amount of tax." Petitioners would have us disregard completely the standard of section 58(g)(2)(B) as originally enacted, namely, whether the tax laws of the foreign country accorded such gain preferential treatment. This we cannot do.

Congress did not intend to emasculate the original standard for determining preferential treatment under section 58(g)(2)(B). The reason for the 1971 amendment is reflected in the legislative history. The suggestion had been made that no preferential treatment existed in situations where, for example, a capital gain was recognized in a foreign country which imposed no tax, or a very small tax, on all income (including capital gains). H. Rept. 92–533 (1971), 1972–1 C.B. 498, 524; S. Rept. 92–437 (1971), 1972–1 C.B. 559, 598. Both the House and Senate responded to that suggestion as follows:

it was not the intent of Congress to exclude capital gain * * * income from the minimum tax in situations of this type and that there should be a clarification of the situations in which capital gain * * * income attributable to foreign sources will be subject to the minimum tax. Accordingly, the bill provides that income of these types which is attributable to foreign sources is to be treated as receiving preferential treatment (and, thus, be subject to the minimum tax) if the foreign country imposes no significant amount of tax with respect to those items of income.

The types of situations in which capital gain income is to be treated as receiving preferential treatment under the bill *include* those where the country involved imposes either no tax or an insignificant tax with respect to capital gains or other income, or both. [H. Rept. 92–533, *supra*, 1972–1 C.B. at 524–525; S. Rept. 92–437, *supra*, 1972–1 C.B. at 598–599. Emphasis added.]

It is clear the 1971 amendment was enacted in response to a perceived loophole that capital gains recognized in a foreign country, which imposed an insignificant amount of tax on all types of income, would escape the minimum tax. Since such gains, technically, are not treated preferentially by the foreign country, in that all income is taxed at the same rate, it was suggested that those gains would escape the minimum tax. Hence, the 1971 amendment was enacted to accord such gains "preferential treatment" within the meaning of section 58(g)(2). Instead of replacing the original standard (preferential treatment under the tax laws of the foreign country), the 1971 amendment merely clarifies that standard. *Austin v.*

*United States*, 611 F.2d 117, 119 (5th Cir. 1980). Thus, we reject petitioners' argument that the imposition of a significant amount of tax by the foreign country precludes that gain from giving rise to an item of tax preference.

Section 1.58–8(c), Income Tax Regs., delineates four situations in which "preferential treatment" can be found within the meaning of section 58(g)(2).[2] One of those situations is when the gain involved "is subject to tax at a lower effective rate (including no rate of tax) than other items of profit, gain, or income." Sec. 1.58–8(c)(2), Income Tax Regs. Had the gain, herein, been taxed at ordinary rates rather than the flat 26-percent rate for capital gains, the tax imposed by the Republic of Ireland would have been substantially higher. Thus, we find that the Republic of Ireland accorded the capital gain herein "preferential treatment" within the meaning of section 58(g)(2)(B), and petitioners must include one-half of such net capital gain as an item of tax preference subject to the minimum tax.[3]

Accordingly,

*Decision will be entered for the respondent.*

---

[2]Sec. 1.58–8(c), Income Tax Regs., provides:

*Preferential treatment.* For purposes of this section, gain, profit, or other income is accorded preferential treatment by a foreign country or possession of the United States if (1) recognition of the income, for foreign tax purposes, is deferred beyond the taxpayer's taxable year or comparable period for foreign tax purposes which coincide with the taxpayer's U. S. taxable year in cases where other items of profit, gain, or other income may not be deferred; (2) it is subject to tax at a lower effective rate (including no rate of tax) than other items of profit, gain, or other income, by means of a special rate of tax, artificial deductions, exemptions, exclusions, or similar reductions in the amount subject to tax; (3) it is subject to no significant amount of tax; or (4) the laws of the foreign country or possession by any other method provide tax treatment for such profit, gain, or other income more beneficial than the tax treatment otherwise accorded income by such country or possession. For the purpose of the preceding sentence, gain, profit, or other income is subject to no significant amount of tax if the amount of taxes imposed by the foreign country or possession of the United States is equal to less than 2.5 percent of the gross amount of such income.

[3]For the same reasons that we rejected petitioners' argument that an "insignificant amount of tax" is the exclusive standard for determining "preferential treatment," we reject petitioners' argument that sec. 1.58–8(c), Income Tax Regs., is invalid because it provides other situations which constitute "preferential treatment."